NO. 4-05-0495     Filed: 3/3/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SUZANNE BAGENT, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Pike County |
| BLESSING CARE CORPORATION, d/b/a | ) | No. 04L8 |
| ILLINI COMMUNITY HOSPITAL, and MISTY | ) | |
| YOUNG, | ) | Honorable |
| Defendants-Appellees. | ) | Michael R. Roseberry, |
| | ) | Judge Presiding. |

_____

JUSTICE APPLETON delivered the opinion of the court:

In August 2004, plaintiff, Suzanne Bagent, filed a complaint against defendants, Blessing Care Corporation, d/b/a Illini Community Hospital (Illini Hospital), and Misty Young, alleging breach of health-care practitioner/patient confidentiality, invasion of privacy, negligent infliction of emotional distress, and intentional infliction of emotional distress (as to Young only).  In March and April 2005, both defendants filed motions for summary judgment.  In June 2005, the trial court granted Illini Hospital's motion for summary judgment in whole and Young's motion in part, reserving for trial plaintiff's claim for damages for the tort of invasion of privacy.

On appeal, plaintiff argues the trial court erred in granting Illini Hospital's motion.  We reverse.

I. BACKGROUND

In August 2004, plaintiff filed a complaint against defendants, alleging, in multiple counts, breaches of health-care practitioner/patient confidentiality, invasion of

privacy, negligent infliction of emotional distress, and intentional infliction of emotional distress (as to Young only). The complaint alleged, inter alia, that plaintiff was a patient at Quincy Medical Group on September 4, 2003. Between that date and September 12, 2003, blood samples and/or records were sent to Illini Hospital and examined by Young. On or about September 12, 2003, Young revealed the results of those records at a public tavern. The complaint sought damages in excess of $50,000.

In September 2004, defendant Illini Hospital filed an answer, admitting Young revealed one fact about plaintiff, discovered from her medical records, to plaintiff's sister at a tavern in Pittsfield. Illini Hospital alleged that when Young revealed the information, she was not acting within the scope of her employment with Illini Hospital.

In December 2004, Young filed an answer, admitting she was an employee of Illini Hospital at the time of the occurrence. She also admitted inadvertently revealing the test results in a private conversation with plaintiff's twin sister after asking the sister how plaintiff was feeling.

In March 2005, Illini Hospital filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1005 (West 2004)). Illini Hospital alleged, inter alia, that the Illinois Constitution and statutes did not authorize a private right of action, Young's statement was not attributable to Illini Hospital because Young's actions were not within the scope of her employment, and Young was trained in confidentiality and knew she had violated plaintiff's rights as soon as she told plaintiff's sister about plaintiff's pregnancy. In April 2005, Young also filed a motion for summary judgment.

In her discovery deposition, Young testified she was best friends with plaintiff's sister. Young received two weeks of "on-site, hands-on" training to become a phlebotomist and worked at Illini Hospital from August 2001 to October 2003. She stated she had confidentiality training and had signed a confidentiality agreement. She understood the confidentiality rules to mean "don't say anything[, because] everything is private."

Young learned of plaintiff's pregnancy from a fax, of which she made copies for medical and doctor records. At the tavern, Young engaged in a conversation with plaintiff's sister. In her deposition testimony, she recounted the conversation as follows:

> "And then how is your sister, Suzanne, and how is she
> feeling? And she's like what do you mean? I'm like I
> thought she was pregnant, you know. And she's like no.
> And from there on out, I told her, I said I'm really sorry.
> Actually, I told her I was sorry. I said please don't tell
> Suzanne I said that I told you. Because she told me she's
> like how did you find this out? And she was just asking me
> more and more questions. And I'm like, well, I seen [sic] her
> result. I said I could get fired for this, I'm really sorry, I didn't
> realize that you didn't know. I just assumed. And she's like,
> no, it's okay, it's all right. She's like Suzanne won't care,
> blah, blah, blah."

Young accepted the hospital's offer of resignation in lieu of termination on October 14,

2003.

In May 2005, the trial court conducted a hearing on the motions for summary judgment. In June 2005, the court entered an order finding that Young's negligent disclosure in the tavern to plaintiff's sister was not made in the course and scope of her employment and no jury could find the statement was made to serve the purposes of Illini Hospital. The court found summary judgment as to Illini Hospital was appropriate as a matter of law because no jury could find Young's actions were in the course or scope of her employment or done to serve Illini Hospital's purposes.

The trial court further determined summary judgment was appropriate as to the statutory cause of action alleged in the complaint because the statutes were not intended to provide private causes of action.

It is noted that while not specifically pleaded, the federal statute governing this area, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. No. 104-191, 110 Stat. 1936) also does not support a private cause of action. University of Colorado Hospital Authority v. Denner Publishing Co., 340 F. Supp. 2d 1142, 1145 (D. Colo. 2004). It does, however, expose the hospital to liability for fines by the Department of Health and Human Services for the actions of its employees.

As to Young, the court found summary judgment appropriate as to the statutory causes of action, but a common-law right-of-privacy cause of action existed for Young's violation of plaintiff's right to privacy. The court also granted plaintiff's motion for partial summary judgment against Young on the question of whether Young improperly revealed confidential information regarding plaintiff, but issues as to infliction of emotional distress and damages were to be determined at trial. The trial court found

"no just reason for delaying appeal of this judgment." See 155 Ill. 2d R. 304(a). This appeal followed.

## II. ANALYSIS

Plaintiff argues the trial court erred in granting Illini Hospital's motion for summary judgment and in holding Illini Hospital was not liable for Young's breach of patient privacy and confidentiality. We agree.

With the importance of the confidentiality of a patient's medical records in mind (see 735 ILCS 5/8-802 (West 2004); 210 ILCS 85/6.17(b) (West 2004) (patient's medical information must be protected from disclosure)), we must determine whether Illini Hospital should be potentially liable for the breach of patient confidentiality by its employee under a theory of respondeat superior. As this appeal requires us to review the trial court's grant of summary judgment, our review is de novo. Goodrich Corp. v. Clark, 361 Ill. App. 3d 1033, 1044, 837 N.E.2d 953, 962 (2005). "Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 661, 837 N.E.2d 922, 928 (2005), citing 735 ILCS 5/2-1005(c) (West 2004).

Generally, summary judgment is inappropriate in cases involving the scope-of-employment issue. Pyne v. Witmer, 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308 (1989). However, the issue as to whether an act falls within the scope of employment "may be decided as a matter law if the answer is sufficiently clear." Lulay v. Parvin, 359 Ill. App. 3d 653, 657, 834 N.E.2d 989, 993 (2005). "Only if no reasonable

person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting." Pyne, 129 Ill. 2d at 359, 543 N.E.2d at 1308; see also Maras v. Milestone, Inc., 348 Ill. App. 3d 1004, 1007, 809 N.E.2d 825, 828 (2004).

For an employer to be held liable for an employee's tort under the doctrine of respondeat superior, the tort must have been committed within the scope of employment. Pyne, 129 Ill. 2d at 359, 543 N.E.2d at 1308. The plaintiff has the burden to show the contemporaneous relationship between the tortious act and scope of employment. Pyne, 129 Ill. 2d at 360, 543 N.E.2d at 1309.

It has long been recognized that a master may be held to be responsible for the tortious conduct of its servant.

"(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non[]delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent

6

authority, or he was aided in accomplishing the tort by the existence of the agency relation."  Restatement (Second) of Agency §219, at 481 (1958).

The Restatement goes on to define the type of activity for which a master may be liable:

"(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place[,] and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect

that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from

the normal method

of accomplishing an

authorized result;

and

(j) whether or not the act is seriously criminal."

Restatement (Second) of Agency §229, at 506 (1958).

In determining the parameters of the phrase "scope of employment," our supreme court has stated as follows:

"'(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, ***

***

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' (Restatement (Second) of Agency §228 (1958).)" Pyne, 129 Ill. 2d at 360, 543 N.E.2d at 1308.

"A tort can fall within the scope of a person's employment even if the conduct was unauthorized or forbidden by the employer. [Citations.] The employer may be liable for the 'negligent, wilful, malicious[,] or even criminal acts of its employee[] when such acts are committed in the course of employment and in furtherance of the business of the employer.' [Citation.] If an intentional tort is motivated in part by an intent to serve the employer's purpose and in part by the employee's venting of emotion, the employer may be vicariously liable." Maras, 348 Ill. App. 3d at 1007-08, 809 N.E.2d at 828.

As to her employment duties, Young testified in her deposition she received training and worked as a phlebotomist at Illini Hospital from August 2001 through October 2003. During a typical day, Young stated she would "stick people," do some filing and billing, conduct drug screens, and deliver medical records to doctors' boxes.

Young testified that when she started at Illini Hospital, she entered into "some type of confidentiality[-]type agreement." Her understanding of patient confidentiality was that everything is private so "[b]asically don't say anything." Plaintiff's exhibit No. 7 is a confidentiality agreement signed by Young on February 25, 2003, indicating in part that disclosing patient information without proper authorization would constitute a violation of the agreement. Plaintiff's exhibit No. 8 is a confidentiality statement signed by Young on August 2, 2001, indicating she understood she could not discuss confidential patient information.

The conduct at issue here, Young's partial disclosure of plaintiff's medical record, was not of the kind she was employed to perform. Nor was she working as a phlebotomist at the time of her improper disclosure. The last factor to consider in whether the conduct falls within the scope of employment is whether it is actuated, at least in part, by a purpose to serve the employer.

It is because of the unique employment environment and the unique duties of the employees working in that environment that the traditional concepts concerning the scope of the master-servant relationship are difficult to apply. Most case authority in this area of the law arises from factual situations where the master sought to avoid liability for the tortious conduct of its servant because the servant was acting at a time when he was outside of the master's control and direction, i.e., engaged in a frolic. The hospital's training of its employees did not limit the duty of the employee to maintain confidentiality of patients' medical information only during working hours. Rather, that duty, imposed by the hospital in its execution of its duties, was, according to its own training, to extend to all times and to all places. In effect, for purposes of

patient confidentiality, Young was on duty 24 hours a day, 7 days a week.

Our appellate court has dealt with a similar view of the extended scope of the master-servant relationship with regard to police officers. In Gaffney v. City of Chicago, 302 Ill. App. 3d 41, 706 N.E.2d 914 (1998), the court reversed the entry of a judgment n.o.v. entered against a jury verdict in favor of the plaintiff against the city. There, a police officer employed by the city brought his service weapon home and stored it in an unlocked container (Gaffney, 302 Ill. App. 3d at 44, 706 N.E.2d at 916). His teenage son obtained possession of the weapon, brought it to a party, and ultimately shot the plaintiff's decedent. Gaffney, 302 Ill. App. 3d at 44, 706 N.E.2d at 916.

After an extensive recitation of the facts surrounding the need for the officer to have possession of his service revolver when he was not on shift, including the expectation of the police department that every police officer was "on duty" in the event of any evident criminal act or public disturbance, Justice Gordon, writing for the majority, found that the officer here was effectively on duty as a police officer when he was off shift and was expected to store his weapon at his home, as no weapon storage was provided at the police station. Gaffney, 302 Ill. App. 3d at 51, 706 N.E.2d at 920-21. Just as the police officer in Gaffney had a continuing off-shift duty to possess and maintain his service weapon so that he could protect the public, Young had a continuing off-shift duty to maintain the confidentiality of patient records. This duty derived not only from the hospital's rules of employment, but also from the patient's right to privacy. As the Gaffney court noted, even the violation of a master's direction does not obviate the liability of the master under a theory of respondeat superior. Gaffney, 302 Ill. App. 3d at

55, 706 N.E.2d at 923, citing Restatement (Second) of Agency §230, at 511 (1958).

The traditional limitations of a master's liability under <u>respondeat</u> <u>superior</u> are derived, in a reverse way, from the duties that the master imposes on the servant and the servant's function of advancing the master's business. See <u>Pyne</u>, 129 Ill. 2d at 360, 543 N.E.2d at 1308-09. Neither a police officer nor a hospital employee may consume alcohol on the job; but their duty to refrain from doing so is relieved when they are not working. Police officers, as we have seen in <u>Gaffney</u>, have a constant duty to be vigilant in the protection of the public. Hospital employees, as well as employees of lawyers, therapists, and other employers who maintain confidential information, have a constant duty to keep confidentiality. That duty makes possible the application of the time, space, and actuation analysis in a case such as this. See <u>Pyne</u>, 129 Ill. 2d at 360, 543 N.E.2d at 1308-09. An employee entrusted with confidential information in the course of his or her employment has a duty not to disclose the information--without limitation as to time or space. The duty not to do so is actuated by the needs and requirements of the employer. It was Young's job, at all times and in all places, to refrain from unauthorized disclosures of patients' medical information.

As was also noted in <u>Dragovan v. City of Crest Hill</u>, 115 Ill. App. 3d 999, 1001, 451 N.E.2d 22, 24 (1983), a case also involving a police officer's at-home service weapon, whether or to what extent the servant's actions were within the scope of employment is a question of fact. We find the same question of fact in this appeal. The jury should decide whether Young acted within the scope of her employment when disclosing the confidential medical information.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's order of summary judgment and remand this cause for further proceedings.

Reversed and remanded.

MYERSCOUGH, J., concurs.

TURNER, P.J., dissents.

PRESIDING JUSTICE TURNER, dissenting:

In this case, I would find the trial court did not err in granting Illini Hospital's motion for summary judgment. Therefore, I respectfully dissent.

As the majority notes, Young's partial disclosure of plaintiff's medical record was not of the kind she was employed to perform and did not occur while she was working as a phlebotomist. Slip op. at 11. The majority, however, contends a question exists as to whether Young's conduct was actuated, at least in part, by a purpose to serve the employer. I would find Young's conduct was not moved by a purpose to serve Illini Hospital.

In the case sub judice, no purpose was served when Young told plaintiff's sister about plaintiff's pregnancy. The evidence indicated Young signed confidentiality agreements and had been taught by hospital personnel about the importance of maintaining patient privacy. Young testified she knew she made a mistake as soon as she made mention of the confidential medical information to plaintiff's sister.

Plaintiff makes much of Young's troubles in school and minimum-wage work as a problematic phlebotomist, and yet on appeal, plaintiff attempts to portray Young as a medical provider checking on patients during off-hours and acting as a public-relations officer for the hospital. No such evidence of the latter was presented to the trial court. Young's testimony did not indicate part of her job description included venturing out into the community to check on the status of patients in hopes of serving the purposes of the hospital. Based on the record, no reasonable person could draw such a conclusion.

Here, nothing in the record supports an inference that Young was attempting to benefit or serve her employer when she divulged plaintiff's medical records. In fact, such disclosure was in direct contravention to the confidentiality agreements and did nothing to further the business of Illini Hospital. The majority claims this case offers a "unique" employment environment and "unique" duties that make the concepts concerning the scope of the master-servant relationship difficult to apply. Slip op. at 11. The majority contends "Young was on duty 24 hours a day, 7 days a week" for purposes of patient confidentiality. Slip op. at 12. However, the majority fails to state how Young's inappropriate disclosure of confidential information could be found to have been actuated, at least in part, by a purpose to serve Illini Hospital. The majority has not done so because nothing in the record allows for such a conclusion.

The majority also fires a blank in attempting to liken the facts before us with cases involving off-duty police officers. Young was not employed to use the confidential information for the purpose of idle chit-chat in a tavern; in contrast to a

police officer who might use a gun in an emergency while "off shift." At the tavern, Young did not identify herself as working for Illini Hospital or representing her employer's interests. The fact that she was committing a serious breach of confidentiality, for which she later resigned, indicates the act was not one that falls within the scope of employment. No reasonable jury could find Young's actions were even partly motivated by a purpose to serve Illini Hospital. As Young's conduct was not within her scope of employment, went far beyond the authorized time and space limits, and was not motivated by a purpose to serve her employer, Illini Hospital cannot be held vicariously liable in this case. I would therefore affirm the trial court's judgment.