NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230474-U

NO. 4-23-0474

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHNNY M. RUFFIN JR., | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| DR. KENTON LEE, | ) | No. 20MR416 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Stephen Balogh, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Harris concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court affirmed, concluding no genuine issue of material fact existed as to whether defendant acted with deliberate indifference to the serious medical condition of plaintiff.

¶ 2 In May 2020, plaintiff, Johnny M. Ruffin Jr., an inmate in the custody of the Illinois Department of Corrections (IDOC), commenced an action under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2018)), claiming defendant, Dr. Kenton Lee, was deliberately indifferent to his serious medical needs in violation of the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII and XIV). In May 2023, the circuit court granted defendant summary judgment. Plaintiff now appeals, arguing the court erred when it granted defendant summary judgment because a genuine issue of material fact exists as to whether defendant acted with deliberate indifference to his serious medical condition. For the reasons that follow, we disagree and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            Since 2000, plaintiff has been an inmate in IDOC custody serving consecutively imposed prison sentences of 19 and 25 years. Plaintiff suffers from chronic right-sided cervical radiculopathy as a result of a gunshot wound sustained to his neck. In 2016, plaintiff received medial branch block and radiofrequency ablation procedures at the University of Illinois Chicago Medical Center for his condition. A medial branch block procedure is an anesthetic injection to provide pain relief, and a radiofrequency ablation procedure is a procedure where nerves are destroyed to provide pain relief. The treating physician ordered a follow-up appointment and noted plaintiff could return if he had a return of symptoms. The physician who later met with plaintiff at the follow-up appointment noted plaintiff could return for repeat injections if pain returned.

¶ 5            In April 2017, plaintiff was transferred to the Winnebago County jail to litigate a postconviction petition. Shortly after he arrived at the jail, plaintiff began to complain of neck pain radiating down his right side. A nurse practitioner at the jail met with plaintiff on two occasions over the next month. At the first visit, the nurse practitioner prescribed Tylenol No. 3, a narcotic pain medication, three times per day as needed for 30 days and ibuprofen three times per day as needed for 14 days. At the second visit, the nurse practitioner continued the Tylenol No. 3 and ibuprofen prescriptions for 60 days and added a prescription for gabapentin, a nerve pain medication, twice per day for 60 days.

¶ 6            In July 2017, defendant, a board-certified family practice physician who provided medical care to inmates at the jail, met with plaintiff on two occasions. Defendant is not a pain management specialist and cannot perform medial branch block or radiofrequency ablation procedures. At the initial visit, defendant diagnosed plaintiff with right cervical radiculopathy. Plaintiff requested another medial branch block procedure. Defendant, despite questioning the

medical necessity of another procedure and whether it would be helpful, ordered a referral to an outside pain management specialist for an evaluation. The nursing staff at the jail attempted to schedule plaintiff for a consultation with Rockford Pain Center, Rockford Brain and Spine, and Rockford Pain Management. Rockford Pain Center and Rockford Brain and Spine did not agree to see plaintiff. A physician from Rockford Pain Management agreed to see plaintiff for a consultation but indicated plaintiff would need to undergo a magnetic resonance imaging (MRI) scan prior to the consultation. At the second visit that month, defendant informed plaintiff that Rockford Pain Management was willing to see him but required imaging of his neck. Because plaintiff was unable to undergo an MRI scan due to a retained bullet fragment in his spine, defendant ordered a computed tomography (CT) scan, which plaintiff then underwent.

¶ 7        In August 2017, defendant met with plaintiff. At the visit, defendant increased plaintiff's gabapentin prescription from 300 milligrams twice per day to 300 mg three times per day for two weeks. Defendant also prescribed plaintiff tramadol, a narcotic pain medication, at 50 milligrams three times per day for a month. Defendant informed plaintiff he was waiting for Rockford Pain Management to review the CT scan results. A nurse followed up with Rockford Pain Management but was unable to connect with the physician who originally indicated he would see plaintiff.

¶ 8        In September 2017, defendant stopped plaintiff's tramadol prescription due to plaintiff's complaints of a racing heartbeat and constipation and prescribed him Flexeril, a muscle relaxant. Defendant also increased the gabapentin prescription to 600 milligrams three times per day. Defendant directed the nursing staff to follow up with Rockford Pain Management to determine if they decided whether to see plaintiff. The nursing staff then called Rockford Pain Management but were again unable to connect with the physician who originally indicated he

would see plaintiff.

¶ 9 In October 2017, defendant met with plaintiff. Defendant renewed plaintiff's prescriptions for gabapentin and Flexeril for three months. Defendant told plaintiff the lack of response from the outside pain management providers was an indication, based upon his experience, they would not see him. Defendant directed the nursing staff to call the University of Illinois Chicago Medical Center for assistance in getting plaintiff to be seen by an outside provider.

¶ 10 In December 2017, the nursing staff at the jail again tried to connect with Rockford Pain Management. A message was left in an effort to schedule an appointment for plaintiff.

¶ 11 In January 2018, defendant met with plaintiff. Plaintiff advised his pain level was about the same as it was during their last visit. Defendant prescribed plaintiff new medications. Specifically, defendant prescribed plaintiff 25 milligrams of amitriptyline, a nerve pain medication, to be taken every night for a month and 5 milligrams of cyclobenzaprine, a muscle relaxer used to treat pain, to be taken three times per day for three months. Defendant informed plaintiff that he was unable to obtain a consultation for plaintiff with the outside pain management providers, and plaintiff said he wanted to be sent to Chicago for a consultation. Defendant told plaintiff that he would not be sent to Chicago because his condition was not life-threatening or an emergency. Defendant indicated he would look into whether another local, outside pain management provider, Mercy Pain Management, would accept a referral.

¶ 12 In February 2018, defendant met with plaintiff. Plaintiff advised the amitriptyline did not make much of a difference. Defendant increased the amitriptyline prescription to 50 milligrams, to be taken every night for a month. Defendant also made a referral to Mercy Pain Management. A nurse who contacted Mercy Pain Management to schedule a consultation learned they would not see plaintiff unless he first attempted a course of physical therapy and the notes

from it were provided. Defendant, upon learning this information, directed the nursing staff to contact physical therapy to determine if plaintiff would be an appropriate candidate. A physical therapist determined plaintiff was an appropriate candidate and then began seeing him twice a week.

¶ 13 In April 2018, plaintiff filed grievances concerning the absence of a consultation for a medial branch block procedure, to which jail staff responded the outside pain management provider wanted him to undergo physical therapy before any consultation.

¶ 14 In June 2018, the physical therapist who was working with plaintiff modified plaintiff's therapy regimen to once per month.

¶ 15 In July 2018, plaintiff filed a grievance, requesting a consultation for a medial branch block procedure, to which jail staff responded the request would be forwarded to a provider.

¶ 16 In August 2018, defendant met with plaintiff on two occasions. At the first visit, plaintiff reported physical therapy was helping his neck and arm mobility. Plaintiff also reported his gait had improved. Plaintiff noted he was still experiencing neck pain. Plaintiff requested defendant send the current physical therapy notes to Mercy Pain Management, which defendant declined to do. Defendant, by way of affidavit, explained he did not send plaintiff's physical therapy notes to Mercy Pain Management because plaintiff's course of physical therapy was ongoing. According to plaintiff, defendant asked him during the visit how long he was going to be at the jail. At the second visit that month, plaintiff did not make any complaints of neck or arm pain.

¶ 17 In October 2018, plaintiff was transferred back to a prison operated by IDOC. He was discharged from therapy upon his transfer.

¶ 18 In July 2019, a physician at the prison referred plaintiff for a consultation with an

outside pain management provider for a medial branch block procedure. The consultation occurred in October 2019, and the outside provider recommended a medial branch block procedure. In December 2019, the medical director at the prison approved the recommended treatment. Plaintiff was administered a medial branch block procedure in February 2020.

¶ 19        Defendant, by way of affidavit, explained he made a medical decision to not send plaintiff's physical therapy notes to Mercy Pain Management until the course of physical therapy had concluded because the treatment plan could have changed depending on why physical therapy was discontinued. Defendant also explained the changes he made to plaintiff's medication regimen were intended to alleviate plaintiff's pain.

¶ 20        Based upon this information, defendant filed a motion for summary judgment. The circuit court granted defendant summary judgment.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23        On appeal, plaintiff argues the circuit court erred when it granted defendant summary judgment because a genuine issue of material fact exists as to whether defendant acted with deliberate indifference to his serious medical condition. Specifically, plaintiff maintains a reasonable jury could conclude defendant was deliberately indifferent to his serious medical condition by persisting with ineffective treatment, medication and physical therapy, and by delaying his opportunity to meet with the outside pain management provider until his course of physical therapy had concluded. Defendant disagrees.

¶ 24        Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c)

(West 2022). When considering a motion for summary judgment, the court's role "is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8 (2008). "In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 48, 77 N.E.3d 50. An award of summary judgment is reviewed *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 25        The eighth amendment (U.S. Const., amend. VIII), made applicable to the states by the fourteenth amendment (U.S. Const., amend. XIV), has been found to prohibit the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a violation of the eighth amendment based upon the deliberate indifference to serious medical needs, there must be (1) an objective showing the plaintiff suffered from a serious medical condition and (2) a subjective showing of the defendant's culpable state of mind of deliberate indifference to the serious medical condition of the plaintiff. *Jones v. Mathews*, 2 F.4th 607, 612-13 (7th Cir. 2021).

¶ 26        The only issue in dispute in this case is whether a genuine issue of material fact exists as to whether defendant acted with deliberate indifference to the serious medical condition of plaintiff. The deliberate-indifference standard "mirrors the recklessness standard" set forth in criminal law. *Brown v. LaVoie*, 90 F.4th 1206, 1212 (7th Cir. 2024). To establish a deliberate-indifference claim against a prison or jail physician, it must be shown the physician "act[ed] or fail[ed] to act despite his knowledge of a substantial risk of serious harm." (Internal quotation marks omitted.) *Id*. Deference is given to a physician's professional judgment in this

context "because a [physician] who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state." (Internal quotation marks omitted). *Id*. Where a physician invokes professional judgment as the basis for a treatment decision, the plaintiff, to avoid summary judgment, must provide "evidence from which a reasonable jury could conclude that the [physician] didn't *honestly* believe his proffered medical explanation." (Emphasis in original.) *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016).

¶ 27    Plaintiff maintains a reasonable jury could conclude defendant was deliberately indifferent to his serious medical condition by persisting with ineffective treatment, medication and physical therapy. See *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662-63 (7th Cir. 2016) (noting evidence sufficient to create a jury question may include the defendant's persistence in a course of treatment known to be ineffective). We disagree. Between July 2017 and February 2018, defendant took steps to obtain a consultation with an outside pain management provider for plaintiff. During the interim, defendant provided plaintiff with different medications to alleviate his pain. In February 2018, defendant learned an outside pain management provider would not see plaintiff unless he first attempted a course of physical therapy and the notes from it were provided. Defendant then took steps to provide plaintiff with physical therapy to allow him the opportunity to meet with the outside pain management provider. Defendant continued to provide plaintiff with pain medications while he was undergoing the course of physical therapy. While plaintiff's pain may have endured, defendant acted to obtain a consultation for plaintiff with an outside pain management provider and, in the interim, provided plaintiff with medications to alleviate his pain. Defendant's actions do not constitute the pursuit of a course of ineffective treatment.

¶ 28    Plaintiff also maintains a reasonable jury could conclude defendant was deliberately indifferent to his serious medical condition by delaying his opportunity to meet with

the outside pain management provider until his course of physical therapy had concluded. See

*McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). We disagree. Initially, we reject plaintiff's contention that defendant presented no evidence to support his decision to wait until the course of physical therapy had concluded before sending the notes from it to the outside provider. Defendant submitted an affidavit invoking professional judgment as the basis for his decision and explaining the treatment plan could change depending on why the physical therapy was discontinued. Critically, plaintiff did not submit evidence showing defendant's medical explanation "was a sham or otherwise impermissible." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Plaintiff alternatively suggests a reasonable jury could reject defendant's explanation for his decision as a *post hoc* rationalization based upon the fact the requested procedure was administered to him after he was transferred out of the jail. Plaintiff's course of physical therapy had, however, concluded at the time he was transferred and, moreover, the record does not reflect the requirements of the outside provider who administered the procedure. We also, although not relied upon by plaintiff on appeal, find defendant purportedly asking plaintiff how long he was going to be at the jail is, without more, insufficient to raise a triable issue concerning defendant's explanation for his decision.

¶ 29        In sum, we find no genuine issue of material fact exists as to whether defendant acted with deliberate indifference to the serious medical condition of plaintiff. We, therefore, reject plaintiff's argument that the circuit court erred in granting defendant summary judgment. We note plaintiff, on appeal, also complains about various factual findings made by the court in support of its judgment. Because "we may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the [circuit] court relied on that basis or whether the [circuit] court's

reasoning was correct," we need not consider these additional complaints. (Internal quotation marks omitted.) *United Equitable Insurance Co. v. Thomas*, 2021 IL App (1st) 201122, ¶ 45, 193 N.E.3d 301.

¶ 30                                      III. CONCLUSION

¶ 31          For the reasons stated, we affirm the circuit court's judgment.

¶ 32          Affirmed.