NOTICE
Decision filed 03/08/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190158-U

NO. 5-19-0158

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ROBERT G. FOURNIE SR., Individually and as Shareholder of Belleville Concrete Contracting Company and as Shareholder of Highland Hills Development Co., | ) ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06-CH-597 |
| BELLEVILLE CONCRETE CONTRACTING COMPANY, a Delaware Corporation; HIGHLAND HILLS DEVELOPMENT CO., an Illinois Corporation; JOSEPH C. FOURNIE, Individually and as Shareholder and Director of Belleville Concrete Contracting Company; KENNETH D. FOURNIE, Individually and as Shareholder and Director of Belleville Concrete Contracting Corporation; JAMES J. FOURNIE, Individually and as Shareholder and Director of Belleville Concrete Contracting Company; ADELINE FOURNIE, Individually and as Shareholder of Belleville Concrete Contracting Company; MARY BETH DEFOE, Individually and as Shareholder of Belleville Concrete Contracting Company; and All Unknown Shareholders and Directors of Highland Hills Development Co., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Joseph C. Fournie, Individually and as Shareholder and Director of Belleville Concrete Contracting | ) ) | |

1

Company, and James J. Fournie, Individually and as  )  Honorable
Shareholder and Director of Belleville Concrete  )  Christopher T. Kolker,
Contracting Company, Defendants-Appellants).  )  Judge, presiding.
_____

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in granting summary judgment where there were genuine issues of material fact regarding whether defendants' actions constituted a breach of their fiduciary duties, *ultra vires* acts, and corporate waste.

¶ 2    This case involves a shareholder's action for an accounting of a family-owned business, Belleville Concrete Contracting Company, a Delaware corporation (Belleville Concrete). Following years of litigation, a court-appointed receiver filed a motion for partial summary judgment based upon the receiver's amended motion to compel defendants, James Fournie and Joseph Fournie, to turn over bonuses and lease receipts improperly paid to them by Belleville Concrete. The trial court entered summary judgment against James Fournie and Joseph Fournie and ordered them to turn over those funds to the receiver on behalf of Belleville Concrete.

¶ 3    On appeal, defendants James Fournie and Joseph Fournie claim that (1) it was procedurally improper to enter a summary judgment where there was no underlying complaint or counterclaim brought against them alleging a breach of fiduciary duty, *ultra vires* acts, and corporate waste, and that (2) the trial court erred in granting summary judgment where there were genuine issues of material fact regarding whether defendants' actions constituted a breach of their fiduciary duty, *ultra vires* acts, and

2

corporate waste. For the reasons that follow, the summary judgment orders entered against defendants James and Joseph Fournie are hereby vacated, and the cause is remanded for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5     Belleville Concrete was incorporated in the State of Delaware in February 1955. Hilbert C. Fournie, Adeline Fournie, and Betty J. Riechman were the company's first elected directors. For more than five decades following its incorporation, Belleville Concrete carried out its business in the State of Illinois. Eventually Hilbert and Adeline Fournies' sons, Robert, Kenneth, James, and Joseph, became involved in the ownership and business operations of Belleville Concrete and its subsidiaries.

¶ 6     On June 14, 2006, the plaintiff, Robert Fournie, individually and in his capacity as a shareholder of Belleville Concrete and a shareholder of Highland Hills, filed a four-count complaint against Belleville Concrete, its shareholders and directors,[1] and the unknown shareholders and directors of Highland Hills, a wholly owned subsidiary of Belleville Concrete. The complaint included an action for accounting of Belleville Concrete (count I), an action for an accounting of Highland Hills (count II), an action in partition (count III), and a claim for injunctive relief (count IV). The parties agree that the claims in counts II, III, and IV have been resolved or are pending in another action, and

---

[1]The following shareholders and directors of Belleville Concrete were named as defendants: Joseph Fournie, individually and as shareholder and director of Belleville Concrete; Kenneth Fournie, individually and as shareholder and director of Belleville Concrete; James Fournie, individually and as shareholder and director of Belleville Concrete; Adeline Fournie, individually and as shareholder of Belleville Concrete; and Mary Beth Defoe, individually and as shareholder of Belleville Concrete.

that the issues on appeal involve only count I. Accordingly, we will provide an overview of only those aspects of the litigation that are pertinent to the issues raised on appeal.

¶ 7    In count I of the complaint, the plaintiff sought a valuation and accounting of Belleville Concrete to ascertain whether any monies were improperly or unlawfully paid to the defendants from the accounts and assets of the company. The plaintiff alleged that he made repeated attempts to contact the defendants regarding the status of the company and the value of his shares. The plaintiff also alleged that he made repeated calls for a special shareholders' meeting and that his calls and inquiries were met with "stalling tactics, misleading and incomplete information, and outright hostility." He asserted that he had reason to believe the corporate directors had been misapplying and wasting corporate assets to deny him his majority interest in the company. The plaintiff prayed for an accounting, a court-appointed custodian to manage the business and affairs of the corporation during the litigation, and an order directing the corporation to purchase his shares for fair value, or alternatively, an order to dissolve the corporation.

¶ 8    On the date the plaintiff filed his complaint, members of the Fournie family owned all 250 shares in Belleville Concrete. The plaintiff was a majority shareholder, owning 62.5 shares in Belleville Concrete. Kenneth Fournie was a director and majority shareholder, as he owned 62.5 shares of the company. James Fournie was a director, and he owned 59.5 shares of the company. Joseph Fournie was also a director, and he owned

51.5 shares of the company. Of the 14 remaining shares, Adeline Fournie[2] owned 11 shares, and Mary Beth DeFoe owned 3 shares.

¶ 9    During a hearing on August 11, 2006, the plaintiff asked the court to appoint Donald Samson as a custodian to oversee the operations of Belleville Concrete. The defendants objected to the appointment of a custodian. They argued that Belleville Concrete was a Delaware corporation, and that under Delaware law, a custodian could be appointed only in certain situations that were not applicable at the time of the proceeding. They also claimed that the request for a third-party custodian to take on the day-to-day operations of the company was unnecessary.

¶ 10    After considering the parties' arguments, the trial court determined that the appointment of a custodian was in the best interest of Belleville Concrete and its shareholders. The court noted the obvious tensions among the shareholders, and the need for a resolution that would protect the corporate assets and allow the company to continue to function. The court reasoned that an independent custodian could provide oversight and disseminate information about the company operations to the shareholders. In an order entered that day, the court appointed Donald Samson to act as custodian for Belleville Concrete and its subsidiary, Highland Hills, during the pendency of the litigation. During the proceedings, defendants' counsel inquired about the specific responsibilities of the custodian. The court responded that it could not then precisely define the scope of the custodian's duties, but it did not expect the custodian to run the

---

[2]Adeline Fournie died while the case was pending in the circuit court. On February 12, 2012, her attorney filed a suggestion of her death pursuant to 735 ILCS 5/2-1008 (West 2010).

day-to-day operations of these companies. The court invited further discussion on the matter.

¶ 11 On August 23, 2006, the defendants filed a motion for clarification or reconsideration of the appointment of a custodian, claiming that the court had not defined the scope of the custodian's authority and that the appointment was improper under Delaware law. Following a hearing on September 6, 2006, the trial court set aside Samson's appointment as custodian and proceeded to appoint him as the "Financial Auditor/Examiner" for Belleville Concrete and Highland Hills. The court ordered the parties to allow Samson access to all corporate and financial records of Belleville Concrete and Highland Hills. The court further directed that James Fournie would be responsible for the day-to-day operations and decision-making of Belleville Concrete and Highland Hills, "including but not limited to contracts, estimates, insurance, payroll, taxes, selling lots, buying equipment under $100,000, leasing equipment, offices or real estate to or from another person, firm or entity, and all other business decisions except the selling of corporate assets (not including the aforementioned lots) without court approval."

¶ 12 On October 10, 2006, defendant Kenneth Fournie filed a motion to disqualify his codefendants' attorney of record from the litigation. Kenneth alleged that codefendants' counsel failed to notify the trial court, either prior to or during the hearing on September 6, 2006, that a company called Fournie Contracting Company, Inc., had been incorporated in the State of Illinois on August 31, 2006; that Fournie Contracting Company was intended as an entity that would succeed or compete with Belleville

6

Concrete; that Karen Fournie was identified as the registered agent of the newly formed corporation; and that Karen Fournie was the spouse of defendant James Fournie and an employee/bookkeeper of Belleville Concrete. Kenneth further alleged that Fournie Contracting Company had been using the address, telephone number, and fax number of Belleville Concrete. Several documents were attached in support of the motion to disqualify, including a document from the Illinois Secretary of State's office, indicating that Fournie Contracting Company, Inc., had been incorporated in the State of Illinois on August 31, 2006, and that Karen A. Fournie was listed as the agent.

¶ 13 Kenneth Fournie also filed an emergency motion for injunctive relief. Kenneth argued that James Fournie, who had been appointed to run the operations of Belleville Concrete on September 6, 2006, should be immediately relieved of his responsibilities and should not be permitted to escape liability for his breach of fiduciary duty to the corporation and its shareholders. Kenneth also requested that Karen Fournie be relieved of her duties as an employee of Belleville Concrete and Highland Hills. The plaintiff filed separate motions, joining in Kenneth's motions and his prayers for relief.

¶ 14 On October 11, 2006, the court granted the motion to disqualify defendants' counsel and gave the defendants 21 days to hire new counsel. Belleville Concrete retained new counsel (corporate counsel), who entered an appearance on October 31, 2006. Defendants, James Fournie, Joseph Fournie, Adeline Fournie, and Mary Beth DeFoe, retained separate counsel who entered an appearance on November 6, 2006. There is no indication that the court ruled on the emergency motion for injunctive relief.

7

¶ 15    On November 13, 2006, the plaintiff filed a motion seeking leave to amend his complaint to add Fournie Contracting Company, Karen Fournie, and Scott Simonin, as party-defendants, and to add additional counts for a constructive trust and violation of fiduciary duty. Although the motion was granted, the plaintiff did not file an amended complaint.

¶ 16    On December 28, 2006, auditor Samson sought leave to retain a forensic accounting firm, Brown, Smith and Wallace, LLC (the Brown firm), to perform a business valuation of Belleville Concrete and related accounting work. The court granted the motion over the objections of defendants James Fournie and Joseph Fournie.

¶ 17    On February 9, 2007, defendants, James Fournie, Joseph Fournie, Adeline Fournie, and Mary Beth DeFoe, filed a motion asking the court to reconsider the auditor's request to hire the Brown firm, arguing that the firm's $12,000 fee was excessive. The defendants asserted that their accountant had obtained an estimate of $2500 to $3000 from a reputable business valuation firm for the same work.

¶ 18    On February 15, 2007, Belleville Concrete filed a motion for leave to file voluntary dissolution papers with the Delaware Secretary of State and to sell the corporate assets at auction. Corporate counsel reported that a shareholder's meeting had been held on October 30, 2006, and that the shareholders were deadlocked on the issue of dissolution. Corporate counsel also reported that James Fournie advised that Belleville Concrete had only four significant jobs remaining and less than $75,000 in the corporate checking account. Corporate counsel indicated that Belleville Concrete had significant assets that could be sold at auction, and he suggested that forcing each brother to bid

8

against the others would likely yield the best price for corporate assets. Corporate counsel noted that each of the shareholders had accused other shareholders and directors of some perceived corporate wrongdoing, that the pace of the litigation had been slow, and that continued litigation would only serve to deplete the corporate asserts and tarnish whatever value remained in the corporate name.

¶ 19   That same day, Belleville Concrete filed a motion to reconsider the auditor's request to hire the Brown firm to conduct a business valuation. Corporate counsel indicated that at the time the business valuation was sought, it was thought that the valuation might encourage one group of shareholders to buy out the other group of shareholders, but since then, the shareholders had reported "irreconcilable differences." Corporate counsel suggested that the valuation of a business that was apparently winding down would be meaningless, and that the scarce resources of the company should be conserved. Corporate counsel also suggested that each shareholder should be allowed to conduct a forensic audit of the company at his or her own expense.

¶ 20   On April 4, 2007, auditor Samson filed a status report. Samson reported that after holding interviews with James Fournie, Kenneth Fournie, and the corporate accountant, Scott Simonin, "it was apparent that the brothers could not continue to work together and that the continuation of the business by the brothers with buyout of Bob Fournie's interest was not feasible unless the remaining 3 brothers were willing to divide the corporation into 2 separate entities and operate completely independently of each other." Samson indicated that the Brown firm had not been able to obtain sufficient financial statements and records to begin a "going concern" valuation. Samson reported that James Fournie

9

indicated the company had no jobs in progress and had recently released all employees. Samson also reported that Karen Fournie, wife of Jim Fournie, and office manager/bookkeeper of Belleville Concrete, had started a new corporation that essentially performed the same work as Belleville Concrete.

¶ 21 Samson recommended that Belleville Concrete's assets be marshaled and liquidated. He indicated that the sale of the corporate assets would eliminate the need for a valuation. Samson noted that the four brothers had accused one another of using corporate funds and corporate assets for personal gain or personal use, and he recommended that the court authorize the accounting firm to investigate those allegations "to determine if the four majority shareholders owe money or property to the corporation that is not reflected on the books of the corporation." Finally, Samson stated that the facts warranted an investigation into "the relationship of the company formed by Karen Fournie to Belleville Concrete to determine if funds are due Belleville Concrete from the new company."

¶ 22 Following a hearing on April 5, 2007, the trial court found that "the corporation remains deadlocked." The court appointed Samson to act as the receiver of Belleville Concrete and ordered him to marshal the assets of the company and sell them at public auction, to obtain the schedules of assets and depreciation from the corporate accountant, and to prepare an inventory of assets to be sold and a schedule of debts to be paid. The court instructed that upon the sale of the asserts, corporate counsel should file a voluntary dissolution with the Delaware Secretary of State. The court ordered the parties and corporate officers to preserve all corporate records and to give Samson access to the

books and property. The court also ordered the corporate president to forward to the corporate accountant all information necessary to bring the books current. The corporate officers were directed to deliver all corporate assets, including vehicles, to the corporation's premises within seven days of the order.

¶ 23   On April 19, 2007, receiver Samson filed an inventory of the assets and equipment owned by Belleville Concrete. He noted that the plaintiff and Kenneth Fournie were preparing a list of additional items which they believed had not been included in the inventory. In the months that followed, Samson obtained contracts for the sale of real estate and prepared for an auction of the company's equipment.

¶ 24   On April 7, 2008, the trial court entered an order allowing corporate counsel to withdraw as attorney of record for Belleville Concrete. In its order, the court noted that James Fournie and Joseph Fournie, acting in their capacities as two-thirds of Belleville Concrete's board of directors, had voted to discharge corporate counsel, after questioning the value of having corporate counsel and a receiver in the same litigation. The court further noted that corporate counsel and Samson agreed that a receiver could complete the remaining tasks.

¶ 25    On May 22, 2008, receiver Samson filed a motion for turnover of bonuses and lease receipts allegedly paid to defendant James Fournie, and a separate motion for turnover of bonuses allegedly improperly paid to defendant Joseph Fournie. Samson claimed that the payments depleted the corporate assets to the detriment of the company and its shareholders and that the defendants breached their fiduciary duties in accepting those payments.

11

¶ 26   In a response filed on October 15, 2010, defendants James Fournie and Joseph Fournie claimed that the receiver was improperly attempting to assert powers beyond those granted to him in the appointment order of April 5, 2007. The defendants also argued that the bonuses were appropriate for the work they performed, that the lease payments were fair, and that the payments were made in good faith.

¶ 27   On September 13, 2011, receiver Samson filed an amended motion for turnover. At the outset, Samson asserted that he was bound to carry out the directives of the trial court and to exercise the statutory powers of a receiver, including collecting outstanding debts, claims, and property due and belonging to the corporation. In carrying out his duties, Samson became aware of certain assets that were required to be turned over to the corporation to effectuate an orderly liquidation of the company and an equitable distribution of shares. Samson alleged that James Fournie and Joseph Fournie accepted the following bonuses on August 7, 2006, and September 7, 2006:

Payments to Joseph Fournie:

- Check No. 17732    8/7/06    $34,677.00
- Check No. 17733    8/7/06    $34,677.00
- Check No. 17736    9/7/06    $34,677.00

Payments to James Fournie:

- Check No. 17731    8/7/06    $168,184.00
- Check No. 17734    9/7/06    $ 82,634.70
- Check No. 17735    9/7/06    $ 82,634.70

¶ 28   Samson further alleged that on August 4, 2006, James Fournie accepted an excessive payment of $29,000, from Belleville Concrete for the lease of his two personal

vehicles. Samson noted that one vehicle, a 2006 Ford F150 truck, was leased to Belleville Concrete at a rate of $2700 per month, and that the second vehicle, a 2004 F550 utility truck, was leased at a rate of $2500 per month. Samson claimed that the bonus and lease payments depleted the corporate assets of Belleville Concrete to the detriment of the company and its other shareholders, and that in accepting the bonuses and lease payments, James Fournie and Joseph Fournie breached their fiduciary duties and committed *ultra vires* acts and corporate waste. Samson also claimed that James Fournie and Joseph Fournie should be required to repay the litigation fees advanced to them if they breached their fiduciary duties.

¶ 29    A case management conference was held on November 12, 2012. In an order entered that day, the trial court directed the receiver to file a "specific motion for summary judgment." Pursuant to that order, receiver Samson filed a motion for partial summary judgment and a supporting memorandum on December 14, 2012. Samson reasserted the allegations and arguments he made in his amended motion for turnover. He specifically reserved his claim for turnover of attorney fees advanced by Belleville Concrete for payment of the litigation expenses incurred by James Fournie and Joseph Fournie. Samson attached supporting documents, including copies of the Belleville Concrete checks written and signed by James Fournie, the lease invoice documents, and the responses of James Fournie and Joseph Fournie to the receiver's requests to admit.

¶ 30    On January 18, 2013, defendants James Fournie and Joseph Fournie filed a response in opposition to Samson's motion for summary judgment. The defendants initially claimed that the motion for summary judgment was procedurally improper

13

because the receiver had not filed a complaint or counterclaim against them. They also claimed that the receiver was improperly attempting to assert powers beyond those granted in the appointment order of April 5, 2007.

¶ 31    In addressing the substance of the summary judgment motion, the defendants argued that there were genuine issues of material fact as to whether the defendants breached any fiduciary duty or committed *ultra vires* acts or corporate waste. The defendants acknowledged they received the lease and bonus payments referenced by the receiver. They argued that the receiver failed to cite to any provision of Belleville Concrete's certificate of incorporation or its bylaws which stated that bonuses could only be given upon a vote of the board of directors at formally noticed meeting. They further argued that, historically, Belleville Concrete had a practice and procedure whereby it gave employee bonuses when the company had a profitable job and an employee was instrumental in the success of the project. They asserted that the subject bonus payments were reasonable, that the payments were properly made as part of their compensation for work performed on a profitable job, and that two other employees also received bonuses because of their contributions to the success of that project.

¶ 32    The defendants also argued that the subject lease payments were fair and reasonable, and necessary so the employees could effectively perform their jobs. The defendants further claimed that, historically, Belleville Concrete entered into lease agreements for equipment and vehicles owned by officers and directors without obtaining approval from all directors, officers, and shareholders. The defendants offered documents in support of their arguments, including excerpts from deposition transcripts of Kenneth

14

Fournie and James Fournie, a copy of handwritten minutes from an annual meeting of shareholders and directors in March 2005, and supporting affidavits from James Fournie.

¶ 33   On October 3, 2013, the trial court granted the receiver's motion for partial summary judgment. In a lengthy order, the court set forth its findings and conclusions of law. Initially, the court found that receiver Samson complied with all appropriate procedural requirements in bringing his motion for partial summary judgment, and that Samson had full authority to pursue a claim to recover damages resulting from the unauthorized acts of a director or officer. Next, the court found that there was no genuine dispute that the payment of bonuses to James Fournie and Joseph Fournie were "void, *ultra vires* acts"; that the payment of the subject bonuses constituted a breach of the defendants' fiduciary duties and an act of corporate waste; and that the lease payments were structured to benefit James Fournie to the detriment of the company.

¶ 34   In its order, the trial court specifically found that the bonus payments were "void, *ultra vires* acts," because the payments had not been voted upon at a duly noticed meeting of the company's board of directors as required by the company's certificate of incorporation, its bylaws, and section 141(b) of the General Corporation Law of Delaware (8 Del. Code § 141(b) (2018)). The court further found that the defendants violated the bylaws because no quorum was present to authorize James Fournie to pay the bonuses.

¶ 35   The trial court also determined that the payment of the bonuses was a waste of corporate assets. The court found that the defendants failed to show that the bonuses were made in good faith with the subjective intent to serve the best interests of the company.

15

The court further found that the defendants offered no facts to show how the bonuses were calculated. The court indicated that it was "not reasonable" to conclude that two employees, who had previously earned $68,000 in salary, had contributed services and skills of such value to the corporation "to justify bonuses of two to almost five times those salaries." The court also expressed concern with the timing of the bonuses, finding that the defendants had offered no explanation for "the coincidence that their bonuses were paid after this lawsuit was filed and immediately before and after Mr. Samson's appointment as custodian."

¶ 36  In addressing the allegations of breach of fiduciary duty, the court concluded that the defendants had engaged in self-dealing with respect to the bonuses and lease payments. The court found that the defendants failed to show that the transactions were fair to the company in terms of the negotiation and the prices. The court noted that James Fournie approved the bonuses and the leases without consulting disinterested parties. The court further found that the lease transaction was structured to benefit James Fournie to the detriment of the company in that invoices were generated and, in one case paid in full, before any document referencing a lease was created and while a complaint seeking appointment of a custodian was pending.

¶ 37  After making these findings, the court ordered James Fournie to pay over to the receiver the sum of $333,453.40 representing improperly paid bonuses and $29,700, representing improperly paid truck leases. The trial court further ordered Joseph Fournie to pay over to the receiver the sum of $104,031, representing improperly paid bonuses.

16

¶ 38   On November 1, 2013, defendants James Fournie and Joseph Fournie filed a motion to reconsider the entry of a partial summary judgment against them. In an order entered on June 18, 2014, the court denied the defendants' motion to reconsider and stayed enforcement of the judgment pending resolution of other matters.

¶ 39   On December 2, 2013, receiver Samson filed a motion for summary judgment as to $293,953.58 in attorney fees advanced to James Fournie and Joseph Fournie for the current case and related litigation. Samson claimed that under the company bylaws and the laws of Delaware, the legal fees were required to be repaid because James Fournie and Joseph Fournie were found to have breached their fiduciary duties to Belleville Concrete. In a response filed January 21, 2014, James Fournie and Joseph Fournie argued that Samson's motion for summary judgment was procedurally improper and that the receiver was not entitled to summary judgment on the issue of repayment of attorney fees because there were material issues of fact regarding whether they had breached a fiduciary duty or committed acts *ultra vires* or corporate waste.

¶ 40   Subsequently, receiver Samson filed a motion for summary judgment as to count I of the complaint on behalf of defendant Belleville Concrete. Samson argued that the need for an accounting was effectively moot because Belleville Concrete was liquidating its assets pursuant to an order of the court.

¶ 41   On October 16, 2018, the trial court granted the receiver's motion for summary judgment as to the attorney fees advanced by Belleville Concrete, and entered additional judgments against James Fournie and Joseph Fournie, jointly and severally, in the sum of $14,280, and against James Fournie in the sum of $8813.96. The court also entered

17

summary judgment against the plaintiff as to count I, finding that the plaintiff failed to discharge the accounting responsibility he assumed more than 11 years prior, and that there was no reason to believe that an accounting would yield any new information.

¶ 42    On February 21, 2019, the court approved the final report of the receiver. On March 28, 2019, the trial court issued its final judgment terminating a case that began some 12½ years earlier.

¶ 43                                    II. ANALYSIS

¶ 44    On appeal, defendants James Fournie and Joseph Fournie contend that the entry of summary judgment against them was both procedurally and substantively improper. Before we address these contentions, we must consider what law applies. This case began as a shareholder's action for an accounting of a Delaware corporation. Accordingly, Delaware law applies to substantive matters, and Illinois law governs matters of procedure. *Housman v. Albright*, 368 Ill. App. 3d 214, 218 (2006); *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638, 645 (1995).

¶ 45    Initially, the defendants claim that the trial court erred in granting summary judgment on a theory that was not pleaded in a complaint or counterclaim. The defendants point out that neither the receiver, nor the plaintiff, filed a complaint or a counterclaim alleging that the defendants breached a fiduciary duty or committed an *ultra vires* act or corporate waste. They argue that a complaint fixes the issues in controversy and the theories upon which recovery is sought, and that the receiver could not seek summary judgment based upon a theory that was not pleaded in a complaint or counterclaim.

18

¶ 46    In response, the receiver argues that his amended motion for turnover set forth specific claims for breach of fiduciary duty, waste, and *ultra vires*, and a clear prayer for relief, and that summary judgment was entered on issues clearly raised in his pleading. He further argues that the defendants had a full opportunity to litigate the issues raised in the motion for turnover, and therefore, were not prejudiced by the alleged error.

¶ 47    The defendants' initial point presents a procedural issue that is governed by Illinois law. In Illinois, a motion and a pleading are distinct procedural tools. A motion is an application to the court for a ruling in a pending case, while a pleading is a party's formal allegations of his claims or defenses. See *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 407 (2005). Section 2-603 of the Code of Civil Procedure (Code) identifies a pleading as a cause of action, counterclaim, defense, or reply. 735 ILCS 5/2-603 (West 2018). A counterclaim is used when seeking affirmative relief against one or more plaintiffs or one or more defendants. *Id.* § 2-608. Here, the receiver filed his claim for turnover in a "motion," rather than a counterclaim. This was not proper pleading procedure. The claim for turnover should have been brought in a counterclaim brought on behalf of Belleville Concrete.

¶ 48    Nevertheless, the provisions of our code of civil procedure are to "be liberally construed" so that cases and controversies may be "speedily and finally determined according to the substantive rights of the parties." *Id.* § 1-106. Section 2-603 of the Code provides that all pleadings shall contain "a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply," and that pleadings "shall be liberally construed with a view to doing substantial justice between the parties." *Id.* § 2-603(a),

19

(c). In addition, section 2-612(b) provides that no pleading is "bad in substance" if it contains "such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." *Id.* § 2-612(b). Our supreme court has advised that pleading procedures are not intended to create technical obstacles to prevent reaching the merits of a case at trial, but rather, to facilitate the resolution of real and substantial controversies. See *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 395-96 (1997); *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982). Additionally, in determining the nature of a pleading or a motion, Illinois courts are not bound by the title, and instead will examine the substance of the document. *People ex rel. Ryan v. City of West Chicago*, 216 Ill. App. 3d 683, 688 (1991).

¶ 49 With these principles in mind, we consider the substance of the receiver's amended motion for turnover. The amended motion for turnover was brought on behalf of Belleville Concrete, and it was filed within a shareholder's action for an accounting. Substantively, the amended motion for turnover contained plain and concise claims alleging that defendants James Fournie and Joseph Fournie breached their fiduciary duties, and committed *ultra vires* acts and corporate waste, and a prayer seeking recovery of funds allegedly improperly or illegally paid to those defendants. After examining the amended motion for turnover with a view to doing substantial justice, we find that it satisfied the requirements for a "pleading" under section 2-603(a) of the Code, and that the trial court properly treated it as such. *Norman A. Koglin Associates*, 176 Ill. 2d at 395-96. We also find that the defendants had ample notice of the allegations and an opportunity to be heard, and therefore have suffered no prejudice.

20

¶ 50    The defendants next contend that the trial court erred in failing to acknowledge that the receiver exceeded his authority in filing the motion for turnover. They claim that the receiver was limited to the authority expressly granted in the order of April 5, 2007, and that the turnover of payments was not authorized. They also claim the receiver lacked authority to recover the sums paid for bonuses and leases because those payments were made months before the receiver was appointed.

¶ 51    In response, the receiver claims that he was appointed pursuant to Delaware law, and that under Delaware law, the grant of receivership is very broad. The receiver argues that the trial court authorized him to "marshal the assets" of the corporation, and that this authority included the recovery of funds improperly paid by the corporation.

¶ 52    Under Delaware law, a board of directors is vested with the authority to determine what actions the corporation will take with its assets, including litigation assets. See 8 Del. Code § 141(a) (2018); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *South v. Baker*, 62 A.3d 1, 13 (Del. Ch. 2012). When a Delaware corporation becomes insolvent, the court may appoint one or more receivers "to take charge of its assets, estate, effects, business and affairs, and to collect the outstanding debts, claims, and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits," and to do "all other acts which might be done by the corporation and which may be necessary or proper." 8 Del. Code § 291 (2018). Section 291 further provides that the receiver's powers shall continue so long as the court deems necessary. *Id.* A receiver may act on behalf of the corporation to recover a loss or damages due to an incumbent or former officer's or director's

21

unauthorized act. *Id.* § 124(2); *Du Pont v. Standard Arms Co.*, 82 A. 692, 692-93 (Del Ch. 1912). Additionally, a receiver may be substituted as a party in place of the corporation in any suit or proceeding which was pending at the time of the receiver's appointment. 8 Del. Code § 299 (2018).

¶ 53 According to the record, Samson was initially appointed to act as a custodian on August 11, 2006. The court modified the order on September 6, 2006, vacating Samson's appointment as custodian, and immediately thereafter appointing Samson as the financial auditor/examiner. After reviewing Samson's status report of April 4, 2007, the court determined that Belleville Concrete was insolvent. The court granted corporate counsel's request to move forward with a sale of corporate assets and a voluntary dissolution of the corporation. The court appointed Samson as the receiver and directed him to marshal the assets of the company. Subsequently, the defendants determined that there was no need to have both corporate counsel and a receiver involved in the action, and they agreed that the receiver could handle the remaining matters on behalf of the corporation.

¶ 54 In marshaling the assets of Belleville Concrete, the receiver discovered what he considered to be improper payments to two directors of the company, James Fournie and Joseph Fournie. The receiver sought to recoup those funds for the benefit of the corporation and its shareholders through a motion for turnover, and he was permitted to retain an attorney to assist in that effort. Thereafter, the trial court ordered the receiver to file a motion for summary judgment on his claims for turnover. After reviewing the record, we conclude that the receiver acted within his authority pursuant to the directives of the trial court and the law of Delaware.

22

¶ 55 Finally, the defendants claim that the trial court erred in entering summary judgment in favor of Belleville Concrete and against them. The defendants contend that they presented sufficient evidence to show that there were genuine issues of material fact regarding whether the payment and acceptance of bonuses and lease payments constituted a breach of fiduciary duty, *ultra vires* acts, and corporate waste.

¶ 56 Summary judgment is appropriate when the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The purpose of a summary judgment is not to try a question of fact, but to determine whether a genuine question of material fact exists. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). In determining whether there is a genuine issue of material fact, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id*. at 163. A triable issue precluding summary judgment exists where the material facts are disputed or where the material facts are not disputed, but reasonable persons might draw different inferences from undisputed facts. *Id.* While summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure, and so, summary judgment should not be entered unless the right of the moving party is clear and free from doubt. *Id*. A trial court's order granting summary judgment is reviewed *de novo*. *Id.*

¶ 57 This is a case where many of the material facts were undisputed, but where the parties drew very different inferences and conclusions from those facts. Among the undisputed facts: James Fournie and Joseph Fournie were officers, directors, and

23

shareholders of Belleville Concrete from 2004 and throughout the proceedings in the circuit court. James Fournie issued and signed "bonus" checks totaling $104,031, from the corporate account, payable to Joseph Fournie on August 7, 2006, and September 7, 2006. James Fournie issued and signed checks totaling $333,453.40, payable to himself from the corporate account on August 7, 2006, and September 7, 2006. Commencing July 28, 2006, James Fournie leased two trucks, a 2006 Ford F150 and a 2004 Ford F550, to Belleville Concrete at respective rates of $2700 and $2500 per month. James Fournie issued and signed a check in the sum of $29,700, payable to himself from the corporate account on August 4, 2006. The parties agreed that the aforementioned payments were made, but they disagreed about whether the payments were improper or illegal. They presented evidence to support their respective positions.

¶ 58    In the order granting a partial summary judgment, the trial court concluded that there was no genuine dispute that the payments of bonuses to James Fournie and Joseph Fournie were *ultra vires* acts because the decision to pay the bonuses was not voted on at a duly noticed meeting of the board of directors in accordance with section 141(b) of the General Corporation Law of Delaware (8 Del. Code § 141(b) (2018)), the corporation's certificate of incorporation, and article III, sections 1 and 6 of the corporate bylaws.

¶ 59    Section 141(a) of the General Corporation Law provides the business and affairs of every corporation shall be managed by and under the direction of a board of directors, except as otherwise provided in this chapter or in a company's certificate of incorporation. *Id.* § 141(a). Section 141(b) addresses qualifications of directors and provides that a vote of a majority of directors present at a meeting at which a quorum is

24

present shall be the act of the board of directors unless the bylaws or certificate of incorporation provide otherwise. *Id.* § 141(b). Article III, section 1 of Belleville Concrete's bylaws provides that the property, affairs, and business of the company shall be managed by the board of directors, consisting of three persons, and that a quorum of at least two directors is required to transact business. Article III, section 6 permits the directors to act at meetings on two days' notice by mail to each director.

¶ 60    The provisions of the bylaws and the Delaware statute relied upon by the receiver, and cited by the trial court, do not specifically address employee compensation and bonuses, or require that decisions on compensation and bonuses be voted on at a duly noticed meeting of the board of directors. The certificate of incorporation is included within the record on appeal, but the document is blurred and illegible. Accordingly, we cannot consider it. Further, the defendants presented some evidence to show that, historically, Belleville Concrete had a practice of paying bonuses to employees who were instrumental in the successful completion of a profitable job, and that the subject bonuses were paid in conformity with that historical practice.

¶ 61    Under Delaware law, improper acts by a board of directors are divided into categories of void and voidable. See *Michelson v. Duncan*, 407 A.2d 211, 218-19 (Del. 1979). Voidable acts are those which were performed in the interest of the corporation but beyond the authority of management, while void acts, such as *ultra vires* acts, fraud, and corporate waste, are legal nullities incapable of cure. *Id.* After reviewing the record, we find that the defendants have established that there are genuine issues of material issues regarding whether their acts constituted acts *ultra vires*.

¶ 62 Next, we consider whether the payment of the bonuses and leases constituted corporate waste. Under Delaware law, corporate waste entails " 'an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.' " *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (quoting *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997)). A claim of corporate waste is associated with a transfer of corporate assets that serve no corporate purpose, or for which no consideration is received at all. *Id.* If there is "*any substantial consideration* received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile," there should be no finding of waste, even if the factfinder would conclude after the fact that the transaction was unreasonably risky. (Emphases in original.) *Id.* Claims alleging corporate waste are seldom subject to disposition by summary judgment, as the determination of whether waste has occurred is largely a question of fact, and the court must examine the facts surrounding the situation. *Id.*

¶ 63 The record reveals that the defendants presented some evidence to show that Belleville Concrete derived substantial consideration in exchange for the lease payment and bonuses, and that these payments were not made to deplete the assets of the company. The defendants claimed that they received bonuses to compensate them for the "round the clock" work they performed, and the skills and experience they provided on a specific project that brought a handsome profit to the company. In a supporting affidavit, James Fournie stated that the project began as drywall work, initially bid at $600,000, and was later expanded to include hiring and overseeing subcontractors, resulting in a

26

profit of $1.5 million, and that he and Joseph Fournie were required to regularly work 12-hour days, 7 days a week on the project. James Fournie further averred that the decision to pay bonuses to the defendant and two other employees was a deliberate decision based upon the profitability of the job. James Fournie also explained that, historically, Belleville Concrete had a practice of paying bonuses to employees who were instrumental in the successful completion of a profitable job, and that the subject payments were simply a continuation of that historical practice.

¶ 64    The defendants also presented some evidence to show that the decision to authorize the leases was made in good faith, that Belleville Concrete received substantial consideration because its employees were permitted unlimited use of the vehicles in the performance of their duties, and that the lease payments were made in accordance with the company's historical practice of leasing vehicles from officers and directors. In a second supporting affidavit, James Fournie described the historical practice of Belleville Concrete to enter into lease agreements for equipment or vehicles for use by the company's employees and indicated that the subject lease agreements comported with that practice. James Fournie also stated he consulted with the corporate accountant regarding the reasonableness of lease payments, and that he consulted with and obtained approval from Joseph Fournie before executing the leases.

¶ 65    After reviewing the record, we find that there are genuine questions about the amount of the bonuses paid and whether they bear a reasonable relationship to the success of the corporation. There are also questions regarding the reasonableness of the lease charges and the value of the consideration, if any, the corporation received from

those leases. It bears repeating that the ultimate determination of whether waste has occurred is largely a question of fact, and the trier of fact must examine the facts surrounding the situation and determine the credibility of the witnesses and weight to be given the evidence. *Michelson*, 407 A.2d at 223. Based on the record before us, we find that there are genuine issues of material fact as to whether the bonuses and lease payment constituted corporate waste.

¶ 66   The trial court also determined that the defendants engaged in improper self-dealing in breach of their fiduciary duties. Under Delaware law, officers and directors of Delaware corporations owe fiduciary duties of care and loyalty. *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009). The duty of care requires that directors use that amount of care which ordinarily careful and prudent men would use in similar circumstances and consider all material information reasonably available in making business decisions. *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 749 (Del. Ch. 2005). Deficiencies in the directors' process are actionable only if the directors' actions are grossly negligent. *Id.* When directors of a Delaware corporation are on both sides of a transaction, the duty of loyalty requires them to demonstrate their utmost good faith and the inherent fairness of the bargain. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983). The receipt of self-determined compensation is subject to an affirmative showing that the compensation arrangements are fair to the corporation. *Telxon v. Meyerson*, 802 A.2d 257, 265 (Del. 2002).

¶ 67   After reviewing the record, we find that the defendants presented sufficient evidence to create genuine issues of material fact regarding whether defendant James

28

Fournie engaged in self-dealing when he issued bonuses to himself and Joseph Fournie, and when he leased two of his own trucks to Belleville Concrete. That James Fournie was on both sides of these transactions is not in dispute. As noted above, the defendants presented evidence to show that the payments were inherently fair to the corporation. In his affidavit, James Fournie indicates that Belleville Concrete made a substantial profit on the project in which he, Joseph Fournie, and two other employees received bonuses. James Fournie stated that the amounts paid to himself and Joseph Fournie were much less than the profit made by the corporation and were reasonable. James Fournie also averred that he consulted with the corporate accountant, and another director, Joseph Fournie, before entering into the subject leases. Questions remain regarding the fairness and reasonableness of the lease terms, and the actual benefit to the company from having access to, and use of, the vehicles, but these are factual questions to be answered after hearing from the witnesses and reviewing the evidence.

¶ 68 Finally, under Belleville Concrete's corporate bylaws, the corporation may not pay legal expenses in any action or proceeding in which a corporate officer has been found to have been "derelict" or breached his fiduciary duties. Here, there remain material issues of genuine fact as to whether James Fournie and Joseph Fournie breached their fiduciary duties or committed *ultra vires* acts or acts of corporate waste. Therefore, whether the defendants will be required to refund the legal fees advanced by Belleville Concrete remains at issue.

29

¶ 69                                    III. CONCLUSION

¶ 70    After reviewing the record, we find that the circuit court erred in entering summary judgment in favor of Belleville Concrete and against defendants James Fournie and Joseph Fournie. In reviewing the order granting partial summary judgment in favor of the receiver, the trial court seems to have imposed on defendants a duty to prove their case. The purpose of a summary judgment is not to try a question of fact, but to determine if one exists. We recognize that these parties have been engaged in protracted litigation, but the record demonstrates that there are many issues of material fact yet to be determined. Accordingly, the summary judgment orders entered against defendants James and Joseph Fournie, including the orders to turn over the bonuses, lease payments, and attorney fees advanced, are hereby vacated, and the cause is remanded for further proceedings consistent with the decision.

¶ 71    Summary judgment orders vacated; cause remanded.