# Illinois Official Reports

## Appellate Court

---

### West Bend Mutual Insurance Co. v. Community Unit School District 300, 2021 IL App (2d) 210108

---

| | |
|---|---|
| Appellate Court Caption | WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. COMMUNITY UNIT SCHOOL DISTRICT 300; JOHN DOE NOS. 3, 4, AND 5; and CARLOS ALBERTO BEDOYA, Defendants (Community Unit School District 300, Defendant-Appellee). |
| District & No. | Second District<br>No. 2-21-0108. |
| Filed | November 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 19-MR-755; the Hon. Kevin T. Busch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey A. Siderius, David E. Kravitz, and Melissa H. Dakich, of Cray Huber Horstman Heil & Van Ausdal, of Chicago, for appellant.<br><br>Daniel J. Zollner, Charles A. LeMoine, and Jennifer Warner, of Dykema Gossett PLLC, of Chicago, for appellee. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
                          Justices Hutchinson and Schostok concurred in the judgment and opinion.


**OPINION**

¶ 1         In this declaratory judgment case (735 ILCS 5/2-701 (West 2018)), plaintiff, West Bend Mutual Insurance Company (West Bend), sought a declaration that it had no duty to defend an additional insured, defendant Community Unit School District 300 (district), in connection with several lawsuits filed on behalf of minors. The minors were allegedly sexually molested and/or abused by defendant, Carlos Alberto Bedoya, during after-school programs run by West Bend's named insured, the Boys & Girls Clubs of West Dundee Township (club), which had rented the district premises. Bedoya was an employee of the district and the club. The underlying complaints alleged willful and wanton hiring and retention and willful and wanton supervision against the district. On cross-motions for summary judgment in the declaratory judgment action, the court granted the district summary judgment. The court found that (1) West Bend had a duty to defend the district under the policy's[1] physical abuse and sexual molestation liability endorsement and (2) the district was not required to provide notice of an occurrence and, thus, did not fail to comply with the policy's notice requirement. Subsequently, the court made findings under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). West Bend appeals. We affirm.

¶ 2                                      I. BACKGROUND
¶ 3         The district entered into rental agreements with the club, allowing the club to conduct after-school programs at district schools for the 2016-17 and 2017-18 school years. Under the agreements, the club (1) agreed to name the district as an additional insured in its commercial general liability policy—which it did—and (2) was required to "defend, indemnify and hold harmless" the district against all claims arising out of the club's use of its property or any of its activities on the rented site.

¶ 4                                      A. Doe Complaints
¶ 5         In 2018 and 2019, the district and the club, among others, were named as defendants in several complaints filed by unnamed minors, three of which are relevant here (Doe complaints) (Kane County case Nos. 18-L-519, 18-L-520, and 18-L-521).[2] The Doe complaints, which were attached as exhibits to West Bend's declaratory judgment complaint,[3] which we discuss below. That complaint alleged that the minors were sexually molested and/or abused by Bedoya while he acted as an "agent, servant, employee, tutor and/or volunteer of or for" the district or the club during the club's after-school programs at a district school. Bedoya, they

---

[1]Three policies with identical provisions are at issue, but for simplicity, we refer to a single policy.

[2]Three other cases (Nos. 18-L-309, 18-L-312, and 18-L-141) were dismissed on January 14, 2020.

[3]Thus, they were incorporated by reference into the declaratory judgment complaint. See 735 ILCS 5/2-606 (West 2018).

asserted, used his position with the district and club to engage in "inappropriate behaviors toward children" between "approximately August 2016, and June 2017" as to John Doe 3 and John Doe 4 and between "approximately 2015 and 2017" as to John Doe 2. The complaints alleged that Bedoya's acts were not reported to the district until between "April[ ] 2017 and May[ ] 2017."

¶ 6 The district was the sole defendant in counts I and V of the Doe complaints. In those counts, the Doe plaintiffs asserted claims for willful and wanton hiring and retention of Bedoya (count I) and willful and wanton supervision of Bedoya (count V) and alleged that the district "had a duty to exercise reasonable care for the safety of others," including each minor plaintiff, or in its "supervision of" Bedoya. Each count also alleged that the district "knew, or should have known," that (1) Bedoya lacked proper identification or credentials for his position, (2) there was an outstanding warrant for his arrest, (3) he was engaged in activities involving children, and (4) he was not releasing children to the club's after-school activities after his tutoring sessions. The counts further alleged that the district willfully and wantonly failed to protect the children from the reasonably foreseeable threat Bedoya posed—namely, his inappropriate conduct and sexual abuse. The counts further alleged that the minors suffered injuries as a proximate result of the district's conduct.

¶ 7 The district tendered the defense of the complaints to West Bend, and West Bend agreed to defend the district, subject to a reservation of rights. The reservation of rights raised coverage questions under the policy's commercial general liability coverage as to the definition of "occurrence" and a policy exclusion for "intentional acts," and it questioned the district's compliance with a notice of occurrence condition, set forth below.

¶ 8 **B. Relevant Policy Provisions**

¶ 9 Three West Bend commercial general liability policies are at issue in this case (policy No. 1882101 01 covering the period August 1, 2014, to August 1, 2015; policy No. 1882101 02 covering the period August 1, 2015, to August 1, 2016; and policy No. 1882101 03 covering the period August 1, 2016, to August 1, 2017). All three policies (1) contain a physical abuse and sexual molestation liability endorsement; (2) define the terms "insured," "You," and "Your"; (3) identify the named insured; (4) contain an additional insured endorsement; and (5) contain notice requirements.

¶ 10 The main body of the "Commercial General Liability Coverage Form" defines the terms "You," "Your," and "insured":

"Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations [(*i.e.*, The Boys and Girls Club of Dundee Township)], and any other person or organization qualifying as a Named Insured under this policy. The words 'we' and 'us' and 'our' refer to the company providing this insurance.

The word 'insured' means any person or organization qualifying as such under Section II—Who Is An Insured."

¶ 11 "Section II—Who Is An Insured," in turn, generally provides that an insured is a named insured in the declarations.

¶ 12 In addition, pursuant to the "Additional Insured—Designated Person or Organization" endorsement, which modifies the insurance provided under the commercial general liability coverage part, the district is listed as an additional insured. The endorsement further provides:

"Section II—Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury' *** caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or

B. In connection with your premises owned by or rented to you."

¶ 13    The physical abuse and sexual molestation liability endorsement, which modifies the insurance provided under the commercial general liability coverage part, provides, in relevant part:

"We will pay those sums the insured becomes legally obligated to pay as damages because of 'physical abuse', 'mental injury' or 'sexual molestation' arising out of the *negligent*:

(a) employment;

(b) investigation;

(c) supervision;

(d) reporting to the proper authorities, or failure to so report; or

(e) retention of any person for whom the insured is legally responsible." (Emphasis added.)

"Sexual molestation" is defined as "any actual or alleged act, touching, or caressing or suggestion thereof which could be considered sexual and/or inappropriate."

¶ 14    Finally, the policy's notice requirements, contained in "Section IV—Commercial General Liability Conditions," provide:

"2. Duties In The Event Of Occurrence, Offense, Claim or Suit

a. *You* must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim.

***

b. If a claim is made or 'suit' is brought against *any insured*, *you* must:

(1) Immediately record the specifics of the claim or 'suit' and the date received; and

(2) Notify us as soon as practicable[.]

*You* must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or other legal papers received in connection with the claim or 'suit'[.]" (Emphases added.)

¶ 15                C. West Bend's Complaint and the District's Counterclaim

¶ 16    On June 26, 2019, West Bend filed a declaratory judgment complaint (735 ILCS 5/2-701 (West 2018)). In count I, which is the only count in West Bend's complaint relevant to this appeal, West Bend sought a declaration that it had no duty to defend or indemnify the district. It relied on the commercial general liability coverage, which provides liability coverage for

"bodily injury" caused by an "occurrence"; an intentional-acts exclusion; and the district's alleged failure to comply with the notice-of-"occurrence" condition.

¶ 17    The district filed an answer, affirmative defenses, and a counterclaim for declaratory relief. It denied an actual controversy about the availability of coverage under the commercial general liability coverage. Further, it denied that notice conditions applied to it because it was an additional insured, not a named insured. In count I of its counterclaim, which is the only count relevant to this appeal, the district sought a declaration that West Bend had a duty to defend it from the Doe complaints.[4]

¶ 18                              D. Cross-Motions for Summary Judgment

¶ 19    On March 20, 2020, the district moved for summary judgment (*id.* § 2-1005) on count I of West Bend's complaint and count I of its counterclaim, asserting that the Doe complaints triggered West Bend's duty to defend it under the policy's physical abuse and sexual molestation liability endorsement. The district also contended that the willful and wanton theories raised against it did not defeat West Bend's duty to defend because willful and wanton conduct is a form of negligence. The Doe plaintiffs, it noted, would need to prove every element of a negligence claim before they could establish the heightened state of mind to show willful and wanton conduct. Further, the district argued that, to the extent West Bend argued that use of the term "negligent" in the endorsement was limited to common-law negligence— from which the district was immune—the endorsement was ambiguous and should be construed in the district's favor. Finally, the district argued that the notice requirements upon which West Bend relied applied to the named insured and did not apply to it as an additional insured.

¶ 20    On April 30, 2020, West Bend moved for summary judgment on count I of its complaint, arguing that it had no duty to defend the district because it provided late notice of the underlying sexual abuse lawsuits. It asserted that the Doe complaints alleged that Bedoya's inappropriate behaviors were reported to the district between April 2017 and May 2017. However, West Bend did not receive notice of any of the alleged incidents until October 11, 2018 (about 16½ or 17½ months later), when it received copies of the summons and complaint in case No. 18-L-520.[5]

¶ 21                              E. Court's Ruling and Subsequent Proceedings

¶ 22    On September 25, 2020, the court granted the district's motion for summary judgment on count I of its counterclaim and denied West Bend's motion for summary judgment as to the district. The court noted that the physical abuse and sexual molestation liability endorsement insured the district against loss for claims made against it for sexual molestation arising out of its negligent employment, supervision, or retention of any person for whom the district was responsible. The Doe complaints, it further noted, alleged that Bedoya committed acts of physical abuse and sexual molestation of the type covered by the endorsement. They alleged that the district was liable for its willful and wanton conduct in hiring, retaining, or supervising

---

[4]In count II, the district sought a declaration that its tender of defense to West Bend was targeted and, thus, its own insurer was shielded from any contribution.

[5]The three remaining Doe claimants joined the district's response to West Bend's summary judgment motion.

- 5 -

Bedoya. The court found that willful and wanton conduct is "a heightened form" of negligent conduct. Thus, although the district could not be liable for mere negligence, it could be liable for willful and wanton conduct resulting in the injuries claimed in the Doe complaints. The complaints, it determined, triggered West Bend's duty to defend the district.

¶ 23    As to notice, the court noted that the district notified West Bend of the Doe allegations 1½ years after it became aware of them. The court found that the district was an "insured" pursuant to "Section II—Who Is An Insured." It read paragraph 2a's reference to "You" to mean only the Named Insured, where, in contrast, paragraph 2c refers to "You and any other involved insured." The court noted,

> "Had [West Bend] intended for paragraph 2a to apply to *any other involved insured* in addition to the named insured, they could have easily used the same language they used in paragraph 2c. They did not. Thus, they clearly intended to treat these types of insureds differently. Since the district complied with paragraph 2c, they have satisfied their obligations under the notice provision."[6] (Emphasis in original.)

¶ 24    On March 1, 2021, pursuant to West Bend's motion, the court modified its prior order to include a Rule 304(a) finding.[7] West Bend appeals.

¶ 25                                II. ANALYSIS

¶ 26    West Bend appeals from the court's grant of summary judgment in the district's favor. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* § 2-1005(c). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Id.* A triable issue of fact exists where there is a dispute as to a material fact or where, although the material facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Id.* at 162-63. When, as here, the parties file cross-motions for summary judgment, they agree no genuine issue of material fact exists and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review *de novo* summary judgment rulings. *Id.* ¶ 30. Also, where a court must construe the terms of a contract or an insurance policy, the court is presented with a question of law, and our review is *de novo*. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30.

¶ 27                        A. Willful and Wanton Allegations

¶ 28    West Bend argues first that the court erred in finding that the Doe complainants' willful and wanton allegations triggered its duty to defend. It notes that its physical abuse and sexual molestation liability endorsement expressly states that the only coverage it provides is for

---

[6]The court also denied summary judgment for the district as to count II of its counterclaim relating to the target tender and equitable contribution issue.

[7]On October 23, 2020, the court had granted West Bend's motion for partial summary judgment on count II of its declaratory judgment complaint against Bedoya.

certain types of negligent conduct. The Doe complaints, it contends, solely alleged willful and wanton conduct by the district. West Bend argues that the court equating negligence with willful and wanton conduct is flawed and the complaints' failure to allege any negligent or potentially negligent conduct means it has no duty to defend. For the following reasons, we reject West Bend's claim.

¶ 29        In Illinois, the duties to defend and to indemnify are not coextensive—the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 366 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). This principle has been referred to as the "eight corners rule." *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37; see also *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698 (2000). We liberally construe the underlying complaint and policy in the insured's favor. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991). The threshold to trigger the duty to defend is low. *State Farm Fire & Casualty Co. v. Tillerson*, 334 Ill. App. 3d 404, 408 (2002). "If the facts alleged in the underlying complaint fall within, or *potentially* within, the policy's coverage, the insurer's duty to defend arises." (Emphasis added.) *Outboard Marine Corp.*, 154 Ill. 2d at 108; see *La Grange Memorial Hospital v. St. Paul Insurance Co.*, 317 Ill. App. 3d 863, 869 (2000) (to establish potential coverage and thus a duty to defend, the complaint needs to present only a *possibility* of recovery, not a *probability*); see also *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010) (declaratory judgment rules require courts to determine whether the factual allegations in the underlying complaint fall within or *potentially* within the insurance policies' coverage). However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993) (citing *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73).

¶ 30        "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367; see also *Pekin Insurance*, 237 Ill. 2d at 456 (" 'provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer' " (quoting *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997))). " 'Absent absolute clarity on the face of the complaint that a particular policy exclusion applies, there exists a potential for coverage and an insurer cannot justifiably refuse to defend.' " *Lorenzo v. Capitol Indemnity Corp.*, 401 Ill. App. 3d 616, 620 (2010) (quoting *Novak v. Insurance Administration Unlimited, Inc.*, 91 Ill. App. 3d 148, 151 (1980)). Further, "where the language of an insurance policy is clear and unambiguous, it will be applied as written." *Hatherley*, 250 Ill. App. 3d at 337. However, where the language is ambiguous, it should be construed against the insurer, which drafted the policy. *In re Estate of Striplin*, 347 Ill. App. 3d 700, 702 (2004).

¶ 31        West Bend argues that, for several reasons, the court's "equating" of negligence with willful and wanton conduct is flawed. First, it contends that, "even if" willful and wanton conduct is a heightened form of negligence, a plaintiff must also establish the additional element of deliberate intent to harm or a conscious disregard for the plaintiff's welfare. This

additional element, West Bend asserts, removes willful and wanton conduct from the scope of the negligent conduct that it expressly covers by its endorsement. Second, West Bend argues that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2018)), which contains a definition of willful and wanton conduct, requires a type of conduct that goes "substantially" beyond ordinary negligence. See *id.* § 1-210 (defining willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property"). Thus, it argues, the statute speaks against the court's lesser-included offense rationale. Third, West Bend contends that tort-liability principles do not control an insurance coverage action such as this one, which is subject to the rules of contract construction. Finally, West Bend asserts that *Doe v. Coe*, 2019 IL 123521, upon which the court relied, is not helpful because it is not an insurance coverage case and the willful and wanton claims were addressed only in passing. See *id.* ¶ 78 (noting "[n]o separate and distinct tort exists for willful and wanton conduct"; noting willful and wanton conduct is an "aggravated form of negligence" and that a "plaintiff must allege and prove the same elements for a willful and wanton cause of action as [he or] she does for a negligence action"). In sum, West Bend contends that its endorsement limits coverage to *negligent* acts and omissions. The Doe complaints, it asserts, contain no allegations of any negligent or potentially negligent conduct and, therefore, it has no duty to defend.

¶ 32    The district responds that the Doe complaints do not allege that the district committed any intentional torts or engaged in any intentional misconduct. Rather, the Doe complaints allege that the district had a duty to exercise reasonable care and acted willfully and wantonly in the hiring, retention, and supervision of Bedoya. Thus, the Doe complaints allege aggravated negligence, which is not a separate tort, rather than intentional misconduct, and, in its view, West Bend has a duty to defend the district. First, the district notes that the Doe complaints appear to allege that it is vicariously liable for Bedoya's misconduct; thus, they do not allege any intentional conduct by the district. Second, the district notes that the Doe complaints allege that the district had a duty to exercise reasonable care, which is a negligence standard of care. Third, the district notes that the Doe complaints allege that the district knew or should have known that Bedoya lacked proper identification or credentials for his position, that there was a warrant for his arrest, and that he was engaged in activities involving children. Such an allegation, the district notes, is typically a negligence allegation. Fourth, the district contends that any alleged misconduct before April 2017 (when it first knew about any potential misconduct) could only have been negligent and not intentional. Fifth, the district argues that the term "willfully and wantonly" is ambiguous (because it is a hybrid between negligence and intentionally tortious behavior). Any ambiguity in the underlying Doe complaints must be construed in the district's favor, both in favor of finding the Doe complaints alleged aggravated negligence, rather than intentionally tortious misconduct, and finding a duty to defend under the endorsement. Also, the district argues that West Bend, by asking that we find that the allegations concern intentional conduct, is actually seeking a liability determination, which is improper, as is the introduction of extrinsic evidence.

¶ 33    The district notes that a school district is not liable for ordinary negligence and can only be held liable for willful and wanton or aggravated negligence. It posits that, for West Bend to prevail, it has to establish that there could never be the possibility of coverage for the district's alleged liability under the Doe complaints. On the other hand, the district further contends, for

it to prevail, it need only establish the possibility of coverage; that is, the possibility that the three underlying complaints plead aggravated negligence, rather than intentional misconduct, by the district.

¶ 34　　Further, the district argues, at a minimum, the Doe complaints are ambiguous because they (1) allege negligence standards and nonintentional conduct, (2) can reasonably be interpreted as alleging aggravated negligence claims, and (3) must be liberally construed as alleging such. If they can be reasonably construed as alleging aggravated negligence, there is the possibility of coverage under the endorsement. And if there is the possibility of coverage under the endorsement, the district has met its burden of showing the minimal possibility of coverage and West Bend has a duty to defend. Also, the district argues that, to the extent that West Bend relies on its use of "negligent" and a distinction between ordinary negligence and aggravated negligence, West Bend relies on an inherent ambiguity that it wrote into its policy. Therefore, the policy must be construed in the district's favor. The district maintains that it is entitled to a defense because there is a possibility that the Doe plaintiffs will only be able to prove ordinary negligence and not willful and wanton conduct. It also contends that, because the policy does not define "negligent," that definition must be determined using tort principles.

¶ 35　　In reply, West Bend agrees that the district must prove negligence plus a heightened state of mind. West Bend urges that the complaints be read as a whole to determine whether the facts alleged are potentially within coverage. The Doe complaints, it asserts, contain detailed factual allegations that support claims of willful and wanton conduct. Each complaint, it notes, alleges that Bedoya's inappropriate behaviors were reported to the district between April and May 2017 but that, instead of removing Bedoya's access to children, the district "reassigned children who complained of Bedoya's inappropriate behaviors to other classes at the school." These are not negligence allegations, according to West Bend. West Bend also argues that no case law has held that the term "negligent" is ambiguous and that we should not do so here.

¶ 36　　West Bend maintains that it relies on the plain and ordinary meaning of the term "negligent." It argues that the term is not ambiguous and the district's suggestion of ambiguity is nothing more than a creative possibility that a court cannot consider. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 30 (2005) (" 'The touchstone in determining whether ambiguity exists regarding an insurance policy *** is whether the relevant portion is subject to more than one reasonable interpretation [citation], not whether creative possibilities can be suggested.' " (quoting *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993))). It asserts that we should assess what is actually alleged (willful and wanton conduct), not a lesser-included offense of negligence.

¶ 37　　Comparing the allegations of the Doe complaints to the West Bend policy, we conclude that the alleged facts potentially fall within the policy's coverage for certain negligent acts. Therefore, West Bend has a duty to defend the district. Accordingly, we conclude that the court did not err in granting summary judgment in the district's favor on the issue of whether the Doe complaints' willful and wanton allegations triggered a duty to defend.

¶ 38　　The supreme court has consistently stated that "[t]here is no separate and independent tort of 'willful and wanton' misconduct" and has described willful and wanton conduct as a "hybrid" of negligent and intentionally tortious acts. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274-75 (1994); see also *Coe*, 2019 IL 123521, ¶ 78 (noting "[n]o separate and distinct tort exists for willful and wanton conduct"; it is an "aggravated form of negligence" and a "plaintiff must allege and prove the same elements for a willful and wanton cause of action as [he or]

she does for a negligence action"); *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010) (noting "[t]here is no separate and independent tort of willful and wanton conduct"; but, rather, "[i]t is regarded as an aggravated form of negligence"). "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko*, 161 Ill. 2d at 275-76.

¶ 39          There are two aspects to willful and wanton conduct:

"In Illinois there are two varieties of willful and wanton conduct, intentional and reckless. *Poole v. City of Rolling Meadows*, 167 Ill. 2d 41, 48 (1995). These two types of willful and wanton conduct are distinguished by the actor's mental state. Intentional willful and wanton conduct is committed with 'actual' or 'deliberate' intent to harm. Illinois Pattern Jury Instructions, Civil, No. 14.01 (1995). By contrast, reckless willful and wanton conduct falls in between actual intent and mere negligence. *Poole*, 167 Ill. 2d at 47. Although reckless willful and wanton conduct is not committed intentionally, it is nonetheless, at least in theory, determined based on the actor's 'real or supposed state of mind.' W. Keeton, Prosser & Keeton on Torts § 34, at 212 (5th ed. 1984). Specifically, both the legislature and the supreme court have defined reckless willful and wanton conduct as conduct committed with 'utter indifference' to or 'conscious disregard' for the safety of others. 745 ILCS 10/1-210 (West 2002) [(Tort Immunity Act definition)]; *Pfister v. Shusta*, 167 Ill. 2d 417, 421 (1995). The supreme court has also described the required mental state as a 'reckless disregard' for the safety of others. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285 (2000). Further, '[i]ll will is not a necessary element of a wanton act [*i.e.*, reckless willful and wanton conduct]. To constitute an act wanton, the party doing the act or failing to act must be conscious of his [or her] conduct, and, though having no intent to injure, must be conscious, from his [or her] knowledge of the surrounding circumstances and existing conditions, that his [or her] conduct will naturally and probably result in injury.' *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943). ***

To plead a sufficient cause of action in either willful and wanton conduct or negligence, the plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 557 (1991). However, unlike negligence, in order to sufficiently plead willful and wanton conduct, a plaintiff must also allege 'either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff.' *Adkins*, 129 Ill. 2d at 518." *Kirwan v. Lincolnshire-Riverwoods Fire Protection District*, 349 Ill. App. 3d 150, 155-56 (2004).

¶ 40          Thus, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury. *Krywin*, 238 Ill. 2d at 225. In addition, a plaintiff must establish either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004).[8]

---

[8]We do not disagree with West Bend's general point that tort principles do not control in a contract interpretation case. However, West Bend also posits that the term "negligent," which neither it nor its

- 10 -

¶ 41 Here, the Doe complaints alleged in counts I and V that (1) the district had a duty to exercise reasonable care for the safety of others, including the Doe plaintiffs; (2) the district knew or should have known that Bedoya lacked proper credentials, that there was an outstanding warrant for his arrest, and that he did not follow proper procedures; (3) the district breached its duty by willfully and wantonly hiring or failing to supervise Bedoya and failed to protect the minors; and (4) as a direct and proximate result of the district's conduct, the Doe plaintiffs suffered injuries. Thus, clearly, the Doe complaints' allegations contain the elements of a negligence action, in addition to the allegations concerning willful and wanton misconduct.

¶ 42 We agree with the district that, in addition to alleging willful and wanton misconduct, the Doe allegations *potentially* also allege ordinary negligence. As noted, the difference between ordinary negligence and gross negligence/willful and wanton misconduct is that the latter must include the allegation of a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. It is possible that, ultimately, the Doe plaintiffs will prove the elements of an ordinary negligence claim but be unable to establish the heightened mental state required to show willful and wanton misconduct/gross negligence. In that case, the allegations would fall within the policy's coverage for certain negligent acts. Nonetheless, the district would be immune from a negligence suit pursuant to the Tort Immunity Act. See 745 ILCS 10/3-108 (West 2018).

¶ 43 The supreme court has been clear that willful and wanton misconduct is *not* a separate tort. *Coe*, 2019 IL 123521, ¶ 78; *Krywin*, 238 Ill. 2d at 235; *Ziarko*, 161 Ill. 2d at 274-75. Thus, West Bend's assertion that the willful and wanton allegations "remove[ ]" such conduct from the scope of negligent conduct covered by its endorsement rings hollow. The Doe plaintiffs need only fail in establishing the heightened mental state required for gross negligence or willful and wanton conduct for their allegations to fall within the policy's coverage and trigger its duty to defend. This failure is certainly not a mere creative possibility but is a clear and reasonable potential outcome. We agree with the district that ignoring this possibility is akin to making a liability determination, which is improper in assessing whether West Bend has a duty to defend. See *International Minerals*, 168 Ill. App. 3d at 366 (duty to defend is broader than the duty to indemnify).

¶ 44 In summary, the court did not err in entering summary judgment in the district's favor on the issue of West Bend's duty to defend as to the willful and wanton allegations.

B. Notice

¶ 46 Next, West Bend challenges the court's entry of summary judgment in the district's favor on the notice issue. West Bend argues that the court erred in determining that the district timely provided notice in October 2018 of the occurrences of alleged sexual abuse of which the district became aware in April or May 2017. For the following reasons, we reject West Bend's argument.

¶ 47 Again, the policies' notice requirements, contained in "Section IV—Commercial General Liability Conditions," provide:

---

policy defines, must be given its plain and ordinary meaning and is not ambiguous. Accordingly, we turn to tort law, which provides the elements of both a negligence claim and a willful and wanton/gross negligence cause of action.

"2. Duties In The Event Of Occurrence, Offense, Claim or Suit

a. *You* must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim.

\*\*\*

b. If a claim is made or 'suit' is brought against *any insured*, *you* must:

(1) Immediately record the specifics of the claim or 'suit' and the date received; and

(2) Notify us as soon as practicable[.]

*You* must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or other legal papers received in connection with the claim or 'suit[.]' " (Emphases added.)

¶ 48    The main body of the "Commercial General Liability Coverage Form" defines the terms "You," "Your," and "insured":

"Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations [(*i.e.*, the club)], and any other person or organization qualifying as a Named Insured under this policy. The words 'we' and 'us' and 'our' refer to the company providing this insurance.

The word 'insured' means any person or organization qualifying as such under Section II—Who Is An Insured."

¶ 49    Indeed, "Section II—Who Is An Insured," in turn, generally provides that an insured is a named insured in the declarations.

¶ 50    In addition, pursuant to the "Additional Insured—Designated Person or Organization" endorsement, which modifies the insurance provided under the commercial general liability coverage part, the district is listed as an additional insured. The additional insured endorsement further provides:

"Section II—Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury' \*\*\* caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

\* \* \*

C. In the performance of your ongoing operations; or

D. In connection with your premises owned by or rented to you."

¶ 51    The court read paragraph 2a's reference to "You" to mean only the named insured because, two paragraphs later, paragraph 2c refers to "You and any other involved insured." The court noted,

"Had [West Bend] intended for paragraph 2a to apply to *any other involved insured* in addition to the named insured, they could have easily used the same language they used in paragraph 2c. They did not. Thus, they clearly intended to treat these types of insureds differently. Since the district complied with paragraph 2c, they have satisfied their obligations under the notice provision." (Emphasis in original.)

- 12 -

¶ 52	West Bend argues that its policy requires both notice of an "occurrence" that "may result in a claim" and notice of suit. The district notified West Bend only of the filing of the Doe suits, which was 1½ years after the district became aware of the allegations raised in the suits. West Bend argues that the court's reading of its policy was too restrictive. It notes that, while paragraph 2a uses the term "you," paragraph 2b uses the terms "any insured" interchangeably with "you." Paragraph 2c uses the term "you and any other involved insured." Construing the policy as a whole, West Bend maintains, it is clear that the terms "you," "any insured," and "you and any other involved insured" are used interchangeably to describe the parties who must comply with the notice requirements and this is the only reasonable interpretation of the requirements. No policyholder, it urges, could reasonably expect otherwise. It further argues that the court's reading leads to an unreasonable result. Namely, an additional insured would be relieved of any obligation to provide timely notice of occurrences or incidents to its insurer; thus, it would have broader coverage than a named insured. There is no principled basis for this result, it asserts, and prompt notice allows insurers to timely investigate claims while the evidence is still fresh.

¶ 53	The district responds that, unambiguously, the notice provisions in paragraphs 2a and 2b apply only to "you," but the notice provision in paragraph 2c applies to both "you and any other involved insured." The requirements for "you," *i.e.*, the named insured, to provide notice of an "occurrence" and notice of a "suit" under paragraphs 2a and 2b are different than the requirement for the "you and any other involved insured," which it interprets to mean both the named insured and any additional insured, to send copies of legal papers received in connection with a suit under paragraph 2c. The district argues that, although the words "you," "insured," and "any other involved insured" are not defined in this section, the policy defines them elsewhere. "You" and "your" mean the named insured, which is the club. Thus, under paragraphs 2a and 2b, the club, as "you" or the named insured, was required to provide notice of an "occurrence" or offense as soon as practicable and to provide notice of a claim or "suit" against it or "any insured" (including the district) as soon as practicable. However, the district asserts, under paragraph 2c, both the club (as "you" or the named insured) and the district (as "any other involved insured" or the additional insured) were required to immediately send copies of legal papers received in connection with a "suit." The district also contends that, even assuming West Bend's ambiguous-terms argument is correct, the policy must be construed in the district's favor and against the insurer.

¶ 54	In reply, West Bend asserts that insurance policy notice requirements apply to the named insured and additional insureds. See *International Harvester Co. v. Continental Casualty Co.*, 33 Ill. App. 2d 467, 472 (1962) ("the notice requirements of a policy apply not only to the named insured but also to unnamed additional insureds under an omnibus clause"); see also *Greater Chicago Auction, Inc. v. Abram*, 25 Ill. App. 3d 667, 669-70 (1975). Also, West Bend maintains that the terms "you" and "you and any other involved insured" are interchangeable and that the district has the same duty to notify West Bend of occurrences as does the named insured. Also, West Bend contends that the only reasonable reading of the terms "you," "any insured," and "you and any other involved insured" is that the policy uses them interchangeably to identify persons and organizations that must comply with the notice requirements. However, it stresses that it is not suggesting that the notice conditions are ambiguous. It maintains that it is unreasonable for any party seeking coverage, whether a named or additional insured, to expect to be forever relieved of the obligation to provide notice of an occurrence potentially

covered under the policy. The district's interpretation of the notice provisions, it argues, is unreasonable, and its ambiguity argument must be rejected. Under the district's reading, West Bend asserts that the only notice that an additional insured would have to give would be notice of a suit, which might be filed many months or years after an occurrence. Also, West Bend argues that the district's "restrictive" reading leads to the absurd result that the district would obtain coverage for all the sex-abuse claims without having to provide timely notice of the occurrences to the insurer. On the other hand, as a named insured, the club would have coverage only if it gave timely notice of both the sexual abuse occurrences and the resulting lawsuit. In West Bend's view, in effect, this would mean that the additional insured would have coverage when the named insured would not. See *James McHugh Construction Co. v. Zurich American Insurance Co.*, 401 Ill. App. 3d 127, 132-33 (2010) (interpreting the term " 'the insured' " to include an additional insured, and noting, where the policy did not define " 'the insured,' " "insured" meant any person or organization qualifying for coverage under the " 'Who Is An insured' " provision; finding the parties agreed that " 'an insured' " referred to both the named insureds and any additional insured, and the coverages section of the policy could only be read to apply to both the named insureds and any additional insured because, otherwise, the additional insured would never be covered under the policy).

¶ 55    We conclude that the court did not err in entering summary judgment in the district's favor on the notice issue.

> "Insurance policies are subject to the same rules of construction applicable to other types of contracts. [Citation.] A court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. [Citation.] In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]
>
> The words of a policy should be accorded their plain and ordinary meaning. [Citation.] Where the provisions of a policy are clear and unambiguous, they will be applied as written [citation] unless doing so would violate public policy [citation]. That a term is not defined by the policy does not render it ambiguous, nor is a policy term considered ambiguous merely because the parties can suggest creative possibilities for its meaning. Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416-17 (2006).

¶ 56    Here, we agree with the court's interpretation of the policy provisions. We see no ambiguity in the policy's notice provisions and, to the extent that there is a lack of fairness in the allocation of notice burdens between the club (as a named insured) and the district (as an additional insured), the consequences are for West Bend to shoulder as the drafter of the policy.

¶ 57    The policy defines "You" and "Your" as the named insured, here, the club. An "insured," as amended by the additional insured endorsement, refers to the named insured and any additional insured. With these definitions in mind, the notice provision in paragraph 2a is imposed only on the named insured the obligation to notify West Bend of an occurrence: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." In paragraph 2b, similarly, the policy imposes on "you" (*i.e.*, the named insured) the obligation to notify West Bend of a claim or suit: "You must see to it that we receive written notice of the claim or 'suit' as soon as practicable." However, in paragraph 2c,

notice of suit must be provided by both the named insured and the additional insured: "You and any other involved insured must" provide notice of a claim or suit. Thus, there is no ambiguity in the key terms, which West Bend defines in the policy.

¶ 58 We note that *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 343 Ill. App. 3d 93 (2003), upon which the district relied below, analyzed terms strikingly similar to those in this case and came to the same conclusion. In *American National*, one section of an insurance policy's notice requirement provided that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Internal quotation marks omitted.) *Id.* at 102. The following section of the notice requirement provided that, "[i]f a claim is made or 'suit' is brought against any insured, you must" take certain actions. (Internal quotation marks omitted.) *Id.* The policy defined "you" and "your" as the named insured or any person qualifying as a named insured. (Internal quotation marks omitted.) *Id.* at 103. The *American National* court concluded that the additional insured could not have violated notice requirements because those sections applied to the named insured. *Id.* at 103-04. However, the court held that the additional insured violated another section of the policy, requiring it to "[i]mmediately" send copies of legal papers to the insurer, which applied to "[y]ou and any other involved insured." (Internal quotation marks omitted.) *Id.* at 102.

¶ 59 West Bend criticizes the trial court's and our interpretation as creating the absurd result of imposing greater notice burdens on the named insured than on the additional insured. However, it fails to acknowledge that it drafted the unambiguous language of the policy. We will not find an ambiguity where there is none and where it renders irrelevant the policy definitions.

¶ 60 In summary, the court did not err in granting summary judgment in the district's favor on the notice issue.

¶ 61                                    III. CONCLUSION
¶ 62 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 63 Affirmed.